United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 25, 2007**

Charles R. Fulbruge III
Clerk

**Revised April 30, 2007**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 07-30132
Summary Calendar

ELMIRA PRESTON; HOWARD PRESTON; ROSE LEFRANCE PRESTON;
SHERYL PRESTON; DEBORAH MAZIE; ET AL.,

Plaintiffs-Appellees,

versus

TENET HEALTHSYSTEM MEMORIAL MEDICAL CENTER, INC.,
doing business as Memorial Medical Center,

Defendant-Appellee,

versus

LIFECARE HOSPITAL OF NEW ORLEANS LLC, doing business as Lifecare Hospital;
LIFECARE MANAGEMENT SERVICES, L.L.C.,

Defendants-Appellants.

Consolidated with

No. 07-30160
Summary Calendar

CHERYL WEEMS, Individually and on behalf of her deceased mother,
Veola Mosby, and on behalf of all others similarly situated,

1

versus

TOURO INFIRMARY,

Defendant-Appellee,

SHONO, INC. doing business as Specialty Hospital of New Orleans,

Defendant-Appellant.

---

On Petition for Permission to Appeal from the
United States District Court for the
Eastern District of Louisiana

---

Before DeMOSS, STEWART, and PRADO, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Cheryl Weems and Touro Infirmary ("Touro") moved to remand this class action lawsuit to state court under the "local controversy" exception of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). The district court granted their motion to remand, and SHONO, Inc. d/b/a Specialty Hospital of New Orleans ("SHONO") timely appealed the order. We reverse the district court's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On August 4, 2006, Cheryl Weems, individually and on behalf of her deceased mother and all others similarly situated, filed a class action petition against Touro and SHONO in the Civil District Court for the Parish of Orleans, Louisiana. Weems's claims involve injuries and/or deaths allegedly caused by defects and unreasonably dangerous conditions at the medical facilities of Touro

and SHONO on August 29, 2005, the date of Hurricane Katrina. Weems further contends that Touro and SHONO failed to provide adequate transportation away from the premises after Hurricane Katrina made landfall. In the petition, Weems proposes to certify the following class of persons:

> All persons, except Defendants' employees, who sustained injury and/or damage, including but not limited to, personal injury or wrongful death, as a result of unreasonable dangerous conditions and/or defects in and/or on the premises of TOURO and SHONO on or about August 29, 2005, and/or as a result of the failure of TOURO and SHONO to attain, maintain, and/or provide an adequate means of transportation to timely and/or safely move persons off its premises in the wake of Hurricane Katrina.

On August 29, 2006, SHONO removed the action to federal court pursuant to CAFA. 28 U.S.C. §§ 1332(d)(2) & 1453(b). Neither Weems nor Touro contests that SHONO satisfied the threshold requirements for removal. § 1332(d)(2). Instead, Weems and Touro moved to remand the case under the local controversy exception. On December 14, 2006, the district court granted their motion to remand. The district court's opinion reads in pertinent part that:

> The court concludes that the controversy in this case is truly local inasmuch as it affects the New Orleans area to the exclusion of all others. The alleged injuries occurred in Louisiana, and the two defendants are Louisiana corporations. Further, the best evidence that is available at this time indicates that more than two-thirds of the proposed plaintiff class are citizens of Louisiana. . . . As to the citizenship of those who may be filing wrongful death or survival actions, SHONO does not challenge Touro's contention that seven patients died. Assuming that all of their representatives are not citizens of Louisiana, the number of Louisiana class members would still exceed two-thirds of the class.

SHONO sought permission to appeal, and on February 14, 2007, the court granted permission under § 1453(c).[1] We address whether Weems and SHONO presented sufficient evidence to establish the two-thirds citizenship requirement under the local controversy exception, § 1332(d)(4)(A).

## II. STANDARD OF REVIEW

This court conducts a de novo review of the district court's remand order. *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1117 (5th Cir. 1998) (citing *Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326, 1336 (5th Cir. 1995)). We review the district court's factual findings as to the citizenship of the parties for clear error. *Coury v. Prot*, 85 F.3d 244, 249 (5th Cir. 1996). A finding of fact is clearly erroneous only when "although there may be evidence to support it, the reviewing court on the entire [record] is left with the definite and firm conviction that a mistake has been committed." *Campos v. City of Baytown, Tex.*, 840 F.2d 1240, 1243 (5th Cir.1988) (citing *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985)).

## III. DISCUSSION

A.      Statutory Background

Congress enacted CAFA to encourage federal jurisdiction over interstate class action lawsuits of national interest. CAFA contains a basic jurisdictional test, which requires a removing defendant to prove minimal diversity and an aggregated amount in controversy of $5,000,000 or more. 28

---

[1]On February 5, 2007, shortly before another panel granted permission to appeal in *Weems*, we entered an order that granted a defendant permission to appeal a remand order in *Preston v. Tenet HealthSystems Mem'l Med. Ctr., Inc.*, No. 07-30132. These two class action lawsuits involve nearly identical factual backgrounds; however, the parties and procedural histories are different. On appeal, both Appellants ask the court to determine whether the parties moving for remand introduced sufficient evidence to satisfy the citizenship requirement under CAFA's exceptions to federal jurisdiction. Due to the factual similarities and the legal issues of first impression, the court consolidated these two appeals. Accordingly, we timely enter two separate judgments.

U.S.C. § 1332(d). The district court can decline jurisdiction under three provisions: (1) the home state exception, § 1332(d)(4)(B); (2) the local controversy exception, § 1332(d)(4)(A); and (3) discretionary jurisdiction, § 1332(d)(3).

Pursuant to the local controversy exception, the only provision at issue in this appeal, the district court "shall decline to exercise jurisdiction" when the action meets the following criteria:

> (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
>
> (II) at least 1 defendant is a defendant--
>     (aa) from whom significant relief is sought by members of the plaintiff class;
>     (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
>     (cc) who is a citizen of the State in which the action was originally filed; and
>
> (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and
>
> (ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons.

§ 1332(4)(A).

B.     The Local Controversy Exception

1.     *Burden of Proof and Evidentiary Standard*

In the consolidated case, *Preston v. Memorial Medical Center*, we held that the parties moving to remand the class action to state court must prove that the CAFA exceptions to federal jurisdiction divest the district court of subject matter jurisdiction. *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1024 (9th Cir. 2007); *Frazier v. Pioneer Ams. LLC*, 455 F.3d 542, 546 (5th Cir. 2006). We also held that the party moving for remand must prove the statutory citizenship requirement by a preponderance of the evidence. *Welsh v. Am. Surety Co. of N.Y.*, 186 F.2d 16, 17 (5th Cir. 1951).

We reasoned that Congress explicitly enumerated any envisioned deviations from the general removal statute, and nothing in CAFA's text suggests that Congress meant to impose a heightened burden of proof on parties attempting to remand a class action lawsuit to state court.

2.       *Proving Citizenship to Defeat Diversity Jurisdiction*

In determining diversity jurisdiction, the state where someone establishes his domicile serves a dual function as his state of citizenship. *Stine v. Moore*, 213 F.2d 446, 448 (5th Cir. 1954). A person's state of domicile presumptively continues unless rebutted with sufficient evidence of change. *Acridge*, 334 F.3d at 448 (citing *Palazzo v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000)). Domicile requires the demonstration of two factors: residence and the intention to remain. "When challenged as here, the burden rest[s] on [the plaintiff] to show by a preponderance of the evidence that he was a citizen of that State." *Welsh*, 186 F.2d at 17 (internal citations omitted); *see also Garcia v. Koch Oil Co. of Tex. Inc.*, 351 F.3d 636, 638-39 (5th Cir. 2003). Therefore, Weems and Touro must show that greater than two-thirds of the putative class members were citizens of Louisiana on August 4, 2006, the filing date of the class action petition. 28 U.S.C. § 1332(d)(7) ("Citizenship of the members of the proposed plaintiff classes shall be determined for purposes of paragraphs (2) through (6) as of the date of the filing of the complaint.").

3.       *Evidence Adduced to Prove the Citizenship Requirement*

SHONO argues that the evidence presented by Weems and Touro, the pre-Katrina addresses of the hospitalized patients, does not satisfy the local controversy exception. Specifically, the medical records do not establish that on August 4, 2006, the date Weems filed her class action petition, at least two-thirds of the putative class members were Louisiana citizens. Touro and Weems contend that the presumption of continuing domicile requires SHONO to demonstrate that the relocated class

6

members, who were Louisiana citizens as evinced by the medical records, do not intend to return home.

a.    Medical Records

Weems made no effort to provide citizenship data, stating in her motion that "plaintiffs *believe* that the majority of the members of this class, and certainly more than 2/3 of the members are from Louisiana." (emphasis added). Touro submitted an affidavit from Sandy McCall, its director of medical records, stating that

> There were two hundred and ninety-nine (299) patients present on the premises of Touro Infirmary, immediately before, during and immediately after Hurricane Katrina made landfall in New Orleans on or about August 29, 2005. This number includes individuals who were patients of Specialty Hospital of New Orleans (SHONO, Inc.) And Kindred Hospital. Of the patients present on the Touro premises during and immediately after Hurricane Katrina, two hundred and forty-two (242) of those patients identified a Louisiana address as their primary billing address and residence.

SHONO confirmed that 200 of the 242 patients listed in Touro's affidavit provided an Orleans Parish address as their primary residence. Weems and Touro presented no evidence, however, to demonstrate that these patients not only *resided* in Orleans Parish at the given addresses but also were *domiciled* in Louisiana at the time of Hurricane Katrina. A party's residence in a state alone does not establish domicile. *Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir. 1974). Domicile requires residence in the state and an intent to remain in the state. *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989). Therefore, the medical records are not tantamount to sufficient proof of citizenship. *See Coury*, 85 F.3d at 249 ("[M]ere presence in a [] location does not [constitute] . . . domicile; it must be accompanied with the requisite intent. In most cases, the difficult issue is not presence but whether the intent to change domicile can be shown.").

7

Weems and Touro ask this court to presume, despite the forced mass relocation of Orleans Parish citizens after Hurricane Katrina, that the patients' primary billing addresses listed in the medical records accurately reflect their domicile at the time of the filing of this action, August 4, 2006, nearly a year after the hurricane. Weems cites no authority to support her argument that the medical records serve as a proxy for domicile. *See Combee v. Shell Oil Co.*, 615 F.2d 698, 700 (5th Cir. 1980) ("For purposes of diversity jurisdiction, the domicile of the parties, as opposed to their residence, is the key."); *Mas*, 489 F.2d at 1399 ("For diversity purposes, citizenship means domicile; mere residence in the State is not sufficient."); *Stine*, 213 F.2d at 448 ("Residence alone is not the equivalent of citizenship, although the place of residence is prima facie the domicile; and citizenship is not necessarily lost by protected absence from home, where the intention to return remains."). Touro argues that proof of citizenship based on a party's residence alone permits the district court to assume that a person's state of residence and state of citizenship are the same unless rebutted with sufficient evidence. *See Kitson v. Bank of Edwardsville*, No. 06-528-GPM, 2006 U.S. Dist. Lexis 85285 (S.D. Ill. Nov. 22, 2006) (holding that evidence of the putative class members' residence creates a rebuttable presumption, and if not contested by the opposing party, then residency demonstrates citizenship for CAFA jurisdictional purposes). This approach finds limited support in the case law of our sister circuits. *See, e.g., Hendrix v. New Amsterdam Cas. Co.*, 390 F.2d 299, 301 & n.9 (10th Cir. 1968) (quoting *Kelleam v. Maryland Cas. Co. of Baltimore*, 112 F.2d 940 (10th Cir. 1940) ("[I]t was indicated that proof that a person is a resident of a state is prima facie evidence that he is a citizen thereof and shifts burden of showing that his domicile and citizenship are elsewhere than at the place of his residence to the party so alleging.").

8

In *State Farm Mutual Automobile Insurance Company v. Dyer*, the Tenth Circuit held that the defendant's allegation in the state court complaint that the plaintiff was a Wyoming resident created a presumption of continuing residence in Wyoming. 19 F.3d 514 (10th Cir. 1994). In determining citizenship, the court found that "no [contradictory] evidence appears in the record before us and therefore there is a permissible inference" that the plaintiff remained a Wyoming resident until commencement of the action. 19 F.3d at 519. Based on this inference, the Tenth Circuit concluded that "[w]hile there are references in the evidence to [the plaintiff's] residence instead of his domicile and citizenship, we feel this is not fatal to jurisdiction. . . . We are not satisfied that the evidentiary showing in the record is such that the determination of diversity for jurisdictional purposes was not clearly erroneous and should be sustained." *Id.* at 520 (citations omitted).

In *Delinger v. Brennan*, the defendant listed an Indiana State Prison as his residence. 87 F.3d 214 (7th Cir. 1996). Based on deposition testimony, the district court discovered that prior to his imprisonment, the defendant resided in New York State, where his wife still resided during his incarceration, and he worked as a minister from offices in Elmont, New York. *Id.* at 216. The Seventh Circuit held that "[s]ince domicile is a voluntary status, a forcible change in a person's state of residence does not alter his domicile; hence the domicile of a prisoner before he was imprisoned is presumed to remain his domicile while he is in prison. . . . [T]he presumption articulated in *Sullivan* is rebuttable, but on this meager record it has not been rebutted." *Id.* at 216. In *Sligh v. Doe*, the Fourth Circuit reasoned that "there was some affirmative evidence pointing toward Virginia citizenship [the license plate of a hit-and-run driver wherein accident occurred in Virginia], not conclusive evidence by any means, but sufficient to support a finding in the absence of any contradictory proof." 596 F.2d 1169, 1171 (4th Cir. 1979). Finally, in *Fort Knox Transit v.*

9

*Humphrey*, the Sixth Circuit concluded that "upon *the whole record and in the absence of any challenge to the jurisdiction*, the plaintiff's residence in Ohio is prima facie evidence of his citizenship in that state and is not overthrown by residence in Kentucky as a member of the Armed Forces of the United States, and there being no substantial evidence of voluntary relinquishment of an Ohio domicile." 151 F.2d 602, 602 (6th Cir. 1945) (emphasis added). Here, the medical records alone show mere presence in the state. Neither Touro nor Weems provided any additional evidence, such as vehicle registration or an extended period of residency and employment in Louisiana prior to the forced evacuation prompted by Hurricane Katrina. *See Delinger*, 87 F.3d at 216; *Sligh*, 596 F.2d at 1171. The cases cited above undeniably incorporate language amenable to an argument that the court may determine citizenship based solely on evidence of residency, but Touro fails to appreciate that in these lawsuits, the moving party did not ultimately prevail just because the opposing party offered no rebuttal evidence. Instead, the court considered the entire record to determine whether the evidence of residency was simultaneously sufficient to establish citizenship. Even in *Kitson*, the only post-CAFA case related specifically to the citizenship requirement, the class action had been pending for over two years when the district court remanded the lawsuit to state court under the local controversy and home state exceptions. 2006 U.S. Dist. Lexis 85285. The court noted the extensive record adduced over the course of the proceedings, and concessions from both defendants regarding "the overwhelming likelihood that substantially more than two-thirds of class members are Illinois citizens." *Kitson*, 2006 U.S. Dist. Lexis 85285 at *20. Accordingly, Weems's and Touro's proposed approach for determining citizenship gives undue attention to the naked statements of law as opposed to the substance of the relevant opinions. Based on the record, which includes only the primary billing addresses of the hospitalized patients, Weems and Touro still fail to establish the type of residency

10

information reviewed in other circuits employing the presumption that a person's residency forms an adequate basis for inferring citizenship unless contested with sufficient evidence.

Despite the undeniably local character of this class action lawsuit, Congress enumerated objective requirements for remanding a case to state court under the local controversy exception, including a two-thirds citizenship requirement. Weems and Touro did not raise arguments pursuant to the discretionary jurisdiction provision in their remand motions to the district court. Accordingly, our review entails an analysis confined to the two-thirds citizenship requirement instead of the totality of the circumstances analysis applied in the consolidated case. Yet even under the discretionary jurisdiction provision employed in *Preston*, which permits district courts to weigh the local characteristics of the litigation as part of the remand determination, the movants must still prove that between one-third and two-thirds of the putative class were citizens of the state in which the suit was filed. While the plaintiffs in *Preston* chose to rely on affidavits from a representative number of the class members and the emergency contact information of the deceased patients, parties may also produce more traditional forms of proof used to establish citizenship.

Prior to CAFA, the removing parties needed to show citizenship with respect to the named plaintiffs. 28 U.S.C. § 1332(d)(3)-(4). In these instances, the district court could consider the "places where the litigant exercises civil and political rights, pays taxes, owns real and personal property, has driver's and other licenses, maintains bank accounts, belongs to clubs and churches, has places of business or employment, and maintains a home for his family." *Acridge*, 334 F.3d at 448 (quoting *Coury*, 85 F.3d at 251). These indicators of a person's citizenship are often a matter of public record easily accessed by attorneys and investigators. Moreover, as master of the complaint with the creative license for defining the putative class, the plaintiffs are in the best position to

11

establish citizenship and produce probative evidence. We acknowledge that marshaling evidence of citizenship for the unnamed class members may be a formidable task, especially in light of the circumstances presented here, but the court must evaluate sufficiency on a case-by-case basis to determine whether the district court can make a credible estimate. In this case, with no evidence of intent provided by the movants, the district court could not make the requisite credible estimate necessary to remand under the local controversy exception.

b. Presumption of Continuing Domicile

In *Preston*, we acknowledged that "[t]here is a presumption in favor of [a person's] continuing domicile which requires the party seeking to show a change in domicile to come forward with enough evidence to that effect . . . ." Quoting *Coury*, 85 F.3d at 251. In order to defeat the presumption and establish a new domicile, the person must demonstrate both (1) residence in a new state and (2) an intention to remain in that state indefinitely. *Coury*, 85 F.3d at 250 ("Mere presence in a new location does not effect a change of domicile; it must be accompanied with the requisite intent."). To rely on the presumption of continuing domicile, however, we need more information than Weems and Touro placed in the record. Weems's and Touro's failure to adequately establish the domicile of the plaintiffs at the time of Hurricane Katrina or at the time of the filing of the lawsuit extinguishes any argument that the court may presume continuing domicile. *See Coury*, 334 F.3d at 250. Weems and Touro provided the district court with no evidence, except the medical records, to evince the *intentions* of class members currently residing in states other than Louisiana to either remain out-of-state or return to Louisiana. Without anything more than the patients primary billing addresses, the district court lacked the grounds for making a credible estimate that at least two-thirds

12

of the patients and other proposed class members were citizens of Louisiana during the relevant time period.

The record in *Preston* included a class of approximately fifty fewer patients than the proposed class in *Weems*, the primary billing addresses provided in the medical records, emergency contact information for the deceased patients, the current addresses for some of the potential class members, and eight affidavits stating an intent of returning to New Orleans. Moreover, the plaintiffs in *Preston* filed their petition less than two months after Hurricane Katrina on October 6, 2005; the plaintiffs here filed their petition approximately one year after the storm on August 4, 2006. We acknowledge that many Hurricane Katrina victims may intend to return home and are currently dispersed throughout the nation, but we are not persuaded that the medical records constitute the only evidence available to Weems and Touro for discharging their evidentiary burden. The district court in *Preston* possessed some indication that patients and other potential class members intended on returning to New Orleans. Despite the logistical challenges of offering reliable evidence at this preliminary jurisdictional stage, CAFA does not permit the courts to make a citizenship determination based on a record bare of any evidence showing class members' intent to be domiciled in Louisiana. The pre-Katrina addresses in the medical records fail to satisfy this burden. Therefore, Weems and Touro do not receive the benefit of the continuing domicile presumption.

c.      Data from Road Home Project and United States Census Bureau

Weems contends that statistics from the Road Home Project and voter turnout prove that many Hurricane Katrina victims living in states other than Louisiana intend to return home. These population projections are much too broad for any court to rely on in determining the citizenship of a class member. The medical records and confined time frame of the alleged events giving rise to the

13

lawsuit limit the number of potential plaintiffs. Accordingly, generalized information about the Road Home project and voter turnout lacks the specificity required for the court to determine whether two-thirds of the class members were domiciled in Louisiana at the time this lawsuit was filed. SHONO admitted a November 2006 post-Katrina census report, conducted by the United States Census Bureau, showing that the population of Orleans Parish significantly decreased between August and October 2006. The appellant in *Preston* submitted the same population survey. As we concluded in *Preston*, the census data is too general to contradict an assertion that two-thirds of the patients were not domiciled in the area at the relevant time. The survey reports data from an initial analysis conducted less than a year after Hurricane Katrina and only accounts for population decreases in the Orleans Parish area. For these reasons, we find such evidence unpersuasive in proving the arguments of either party.

4.      *Determination of Class Size*

Weems and Touro only account for patients admitted to the hospital at the time of Hurricane Katrina but provide no citizenship data for beneficiaries that may bring wrongful death and other derivative claims. In *Preston*, we determined that the discrete number of patients hospitalized at Memorial when Hurricane Katrina made landfall constitutes a reasonable estimate of the total class for determining the preliminary jurisdictional question of citizenship. We also noted that at the class certification stage, the district court conducts a more in-depth inquiry into the number of potential class members based on the pleaded class definition. *Robinson v. Tex. Auto. Dealers Ass'n*, 387 F.3d 416, 421 (5th Cir. 2004); *James v. City of Dallas, Tex.*, 254 F.3d 551 (5th Cir. 2001), *cert. denied*, 534 U.S. 1113 (2002).

14

Under CAFA's limited exception, the quality and quantity of evidence available to the movant will necessarily vary from case to case based on the class definition and underlying facts. Nonetheless, it is clear that the movant must make some minimal showing of the citizenship of the proposed class at the time that suit was filed. Weems's motion to the district court states that "plaintiffs believe the majority of the members of this class, and certainly more than 2/3 of the members, are from Louisiana." Weems then attempted to shift the burden of proof and argued to the district court that "[i]f defendant SHONO is in possession of information which would negate this proposition–namely information regarding the citizenship and/or domicile of the other members of the class, they should be forced to produce it as the Defendant bears the burden of persuasion in establishing federal jurisdiction." This statement clearly shows that Weems did not marshal evidence specific to the proposed class. Further, Touro's submission of the medical records provide only addresses, an incomplete picture of the citizenship determination, with no evidence of an intent held by at least two-thirds of the class members to maintain domicile in Louisiana.

In any sufficiency of the evidence analysis, even under the exceptional circumstances of the hurricane, attendant flooding, and forced evacuation, plaintiffs must offer more than conclusory statements to prove citizenship at the relevant time period. Here, Weems and Touro do not even offer an affidavit from the named plaintiffs but instead point only to the primary billing addresses provided in the medical records at the time of Hurricane Katrina in August 2005. To be clear, affidavits are not the only type of evidence sufficient to prove citizenship, and the eight affidavits presented in *Preston* were not the dispositive linchpin for our holding. In this case, however, Weems essentially rested on the pleadings while deciding to forgo the opportunity to conduct limited discovery as contemplated by CAFA.

15

At this juncture, neither the district court record, including the motions to remand, nor the briefing to this court indicate any efforts to put forth specific evidence regarding the citizenship of the class. Even in light of the presumption of continuing domicile, there still must be sufficient evidence to preponderate that the proposed class members were citizens at the time that the lawsuit was filed in August 2006. As the movants, Weems and Touro must present some modicum of evidence in the record that is directly aimed at the statutory required time frame, i.e. the date of the filing of the suit. Otherwise, the district court is left to speculate rather than extrapolate that two-thirds of the proposed class were citizens of Louisiana in August 2006. Since Weems and Touro offered no evidence regarding the citizenship of the proposed class for the relevant time period, we find that the parties failed to meet the two-thirds citizenship requirement under the local controversy exception.

## IV. CONCLUSION

The CAFA exceptions are "designed to draw a delicate balance between making a federal forum available to genuinely national litigation and allowing the state courts to retain cases when the controversy is strongly linked to that state." *Hart v. FedEx Ground Package Sys., Inc.*, 457 F.3d 675, 682 (7th Cir. 2006). Although styled as the local controversy exception, the term "local" is a misnomer in the context of the statutory requirements–the key feature of any judicial inquiry under this CAFA exception must focus on the two-thirds fraction and not whether the surrounding facts implicate a local or national controversy. The medical records alone cannot form an adequate basis for the district court to make a credible estimate that two-thirds of the proposed class were citizens of Louisiana on August 4, 2006. The medical records only provide the court with residency information for the proposed class and fail to demonstrate their intent to be domiciled in New

16

Orleans. Weems and Touro neglected to submit evidence of intent for any member of the proposed class, which vitiated the district court's ability even to extrapolate a citizenship determination. We therefore conclude that the evidence adduced by Weems and Touro is insufficient to allow a credible estimate to be made that at least two-thirds of the proposed class members were domiciled in Louisiana at the time of filing the class action. For these reasons, we reverse the district court's order to remand this class action lawsuit back to state court.