LESLIE H. SOUTHWICK, Circuit Judge:
The Class Action Fairness Act (“CAFA”) confers expansive federal jurisdiction over class actions, with few and narrow exceptions. Here, after the case was removed by the defendants under CAFA, Plaintiff Arbuckle moved to remand the case to state court under the “local controversy exception.” The district court granted the plaintiffs motion, remanding the case. The defendants appealed. We REVERSE and REMAND.
FACTUAL AND PROCEDURAL BACKGROUND
The defendants are a group of related oil and gas companies who operate producing wells in Johnson and Tarrant Counties, Texas. The defendants had obtained oil and gas leases on commercial and residential property in downtown Fort Worth and adjacent locations. As a result, the defendants leased a substantial number of “third-of-an-acre, quarter-of-an-acre” plots. Allegedly, numerous lessors lost their property through foreclosure subsequent to the execution of their leases. The petition[1] filed in state court claimed the defendants had not always obtained subordinations of prior mortgages to the oil and gas leases, which allegedly caused the *337 mortgaged property to pass free and clear of the leases to those who purchased through foreclosure. The petition further asserts that after foreclosure, the defendants continued to produce from the relevant wells without “undertaking the significant, expensive curative work” to address the ownership changes.
Plaintiff Arbuckle Mountain Ranch of Texas, Inc., and the putative class, claim to be post-foreclosure owners of the disputed oil and gas interests. The putative class allegedly includes “between three thousand and five thousand” members “spread out across the United States.” Arbuckle claims the defendants’ oil and gas leases automatically terminated upon foreclosure and the defendants’ continued operation of these wellheads constituted trespass and conversion.[2]
Arbuckle filed the petition in this putative class action on November 19, 2014, in Texas state court. The defendants removed the case to federal court pursuant to CAFA, 28 U.S.C. §§ 1332(d), 14531 On August 7, 2015, the district court granted Arbuckle’s motion to remand the case to Texas state court, holding the local controversy exception applied. We granted the defendants’ petition for permission to appeal under 28 U.S.C. § 1453(c)(1).
DISCUSSION
CAFA extends federal jurisdiction to certain large class action lawsuits. Hol-linger v. Home State Mut. Ins. Co., 654 F.3d 564, 569 (5th Cir.2011). CAFA jurisdiction may be exercised where the proposed class is at least 100 members, minimal diversity exists between the parties, the amount in controversy is greater than $5,000,000, and the primary defendants are not states, state officials, or other government entities. 28 U.S.C. § 1332(d)(2), (5). Here, the parties appear to agree that Section 1332(d)(2)’s requirements are satisfied. Thus, on the face of Arbuckle’s petition, CAFA jurisdiction exists.
There are, though, exceptions to CAFA jurisdiction. The district court remanded this case to state court under the local controversy exception. We review a district court’s remand de novo. Preston v. Tenet Healthsystem Mem’l Med. Ctr., Inc., 485 F.3d 793, 796 (5th Cir.2007).
In enacting CAFA, Congress sought to correct state and local court “[ajbuses in class actions” such as “bias against out-of-State defendants” by expanding federal diversity jurisdiction over interstate class actions. Class Action Fairness Act of 2005, Pub.L. No. 109-2, § 2, 119 Stat. 4. “[T]he language, structure, and history of CAFA all demonstrate that Congress contemplated broad federal court jurisdiction with only narrow exceptions.” Cedar Lodge Plantation, L.L.C. v. CSHV Fairway View I, L.L.C., 768 F.3d 425, 429 (5th Cir.2014) (quotation marks omitted). “Congress crafted CAFA to exclude only a narrow category of truly localized controversies, and the exceptions provide a statutory vehicle for the district courts to ferret out the controversy that uniquely affects a particular locality to the exclusion of all others.” Hollinger, 654 F.3d at 570.
We previously noted that other circuits “recognize that the exception is intended to be narrow, with all doubts resolved in favor of exercising jurisdiction over the case.” Opelousas Gen. Hosp. Auth. v. FairPay Sols., Inc., 655 F.3d 358, 360 (5th Cir.2011). The dissent ques *338 tions the authorities cited in Opelousas. See Evans v. Waiter Indus., Inc., 449 F.3d 1159, 1163 (11th Cir.2006); Westerfeld v. Indep. Processing, LLC, 621 F.3d 819, 822 (8th Cir.2010).[3] Regardless of such concerns, it is unquestionable that “CAFA greatly expands federal jurisdiction over interstate class action lawsuits.” Hollinger, 654 F.3d at 569. Therefore, when deciding whether an exception to CAFA removal applies, we adopt the general approach from sister circuits recognized in Opelousas. If the applicability of an exception is not shown with reasonable certainty, federal jurisdiction should be retained.
The local controversy exception states that a federal district court “shall decline to exercise jurisdiction” in the following situation:
(i) over a class action in which—
(I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
(II) at least 1 defendant is a defendant—
(aa) from whom significant relief is sought by members of the plaintiff class;
(bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
(cc) who is a citizen of the State in which the action was originally filed;
(III)principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and
(ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons.
28 U.S.C. § 1332(d)(4)(A).
The defendants argue remand is improper because two factors of the local controversy exception are not satisfied: (1) the requirement that the putative class include greater than two-thirds Texas citizens;’ and (2) the requirement that at least one local defendant’s alleged conduct form a significant basis of Arbuckle’s claims. Both requirements must be met, and so we focus solely on the first: whether the proposed class includes more than two-thirds Texas citizens. See Opelousas, 655 F.3d at *339 361. For the reasons that follow, we hold Arbuekle has failed to demonstrate the local controversy exception applies.

I. Conflicting Class Definitions

This jurisdictional conflict arises because the parties disagree over how to construe the class definition in Arbuckle’s petition. Arbuekle contends the class includes only current owners of mineral interests, which we will call “the narrow definition.” The defendants, however, contend the class includes all current and former owners of mineral interests since the foreclosure actions in 2004, “the broad definition,” of course.
The class definition issue is critical to determine whether the local controversy exception applies. Arbuekle has presented sufficient evidence to show that, under the narrow definition, the proposed class consists of over two-thirds Texas citizens.[4] Arbuekle has failed, though, to present any evidence about those owners who purchased mineral interests post-foreclosure but have since sold or otherwise relinquished their interests. During a deposition of Arbuckle’s class-citizenship expert witness, the witness conceded that he had not examined the citizenship of interim owners. It was Arbuckle’s burden, as the party seeking remand, to “prove the statutory citizenship requirement by a preponderance of the evidence.” Preston, 485 F.3d at 797. Therefore, if the broad definition controls, Arbuekle has failed to satisfy its burden of proof in the absence of necessary class citizenship evidence.
Arbuckle’s petition includes the two definitions of the putative class in separate paragraphs. The narrow definition appears in paragraph 14:
Plaintiff and all class members are currently mineral interest owners (and in almost all instances also owners of the surface estate) in Johnson and Tarrant Counties, Texas. Some members of the class, and numerous third party lenders (collectively “lenders”), were prior mortgagees, i.e. mortgage owners, with valid, properly recorded mortgages on properties, and mineral interest, (“property” or “properties”) whereby those lands and mineral interests were pledged as collateral on loans to lenders (“mortgages”).
The broad definition appears in paragraph 23, which is the formal description of the class that the plaintiff wishes to certify:
Plaintiff seeks and requests the certification of a class (“the Class” or “Class Members”) comprised of the following:
All non-excluded persons, or entities,[5] in Johnson and Tarrant Counties, Texas, who are, or were, since 2004, purchasers of property, including mineral interests, at foreclosure, of valid, prior-recorded mortgages on properties, or owners who took title by, through or under such a purchaser, from Chesapeake and Total produced gas and other minerals....
*340 The district court carefully analyzed these conflicting definitions on the record, eventually adopting the narrow class definition in paragraph 14. The court characterized paragraph 23’s broader definition as a mere “pleading error,” and held “the totality of the pleadings makes it clear that [Arbuckle is] talking about current owners.” We now perform our own review.
Paragraph 14 states “all class members are currently mineral interest owners.” In conflict with that, paragraph 23 sets out that the Class and Class Members include “[a]ll non-excluded persons or entities ... who are, or were, since 2004, purchasers of property ... or owners who took title by, through or under such a purchaser.” Paragraph 23, reasonably read, includes all non-excluded purchasers since 2004: the initial purchasers at foreclosure who no longer are owners; purchasers from the original or later purchasers who no longer are owners; and the current owners no matter when they acquired their interests on tracts that passed through foreclosures.[6]
The two paragraphs are in direct conflict with one another. Arbuckle says the narrow definition controls on the basis that paragraph 14’s definition appears earlier in the petition. We find no legal authority supporting an earlier-in-placement rule for interpreting pleadings. More important than location is purpose. Paragraph 23, containing the broad definition, begins by saying that “Plaintiff seeks and requests the certification of a class (‘the Class’ or ‘Class Members’) comprised of the following,” and then gives its definition. Thus, the broad definition appears in the paragraph that formally identifies the class. If either paragraph is to be given greater weight, it ought to be the paragraph that contains what the plaintiff has declared is the class definition.
Arbuckle also argues paragraph 23 should be subordinate because its language is murky in relation to paragraph 14. We find no ambiguity in saying the class includes “all” who were purchasers since 2004 or acquired title through such a purchaser.
Finally, Arbuckle argues that paragraph 23 is not in conflict with paragraph 14. Instead, it applies only to current owners because “all current owners were purchasers at some point in time.” Arbuckle’s proposed interpretation overlooks the beginning of paragraph 23, which expressly includes all purchasers, not merely thosé who still own property.
We find paragraph 23 has the stronger claim to being authoritative. We now look at the petition as a whole.

II. Contextual Clues

Under the federal rules, we construe pleadings in their entirety when assessing their sufficiency. See, e.g., Tellabs, Inc. v. Makor Issues & Rights, Ltd,., 551 U.S. 308, 322-23, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007). Likewise, under Texas rules, pleadings must give an opponent fair notice of the plaintiff’s claims after *341 looking at the allegations as a whole. See, e.g., Dallas Area Rapid Transit v. Morris, 434 S.W.3d 752, 760 (Tex.App.—Dall.2014). We may perform a similar review of the entire pleading when assessing CAFA jurisdiction. Still, in determining the class definition, we are limited to those allegations set out in the plaintiffs petition at the time of removal. The “application of the local controversy exception depends on the pleadings at the time the class action is removed.” Cedar Lodge Plantation, 768 F.3d at 426. Congress intended to confer broad federal jurisdiction through CAFA, and so “[ajllowing [a plaintiff] to avoid federal jurisdiction through a post-removal amendment would” conflict with the policy underlying CAFA. Id. at 429.
Reviewing Arbuckle’s petition as a whole, we find at most one other paragraph that supports the narrow definition in paragraph 14 and is inconsistent with the broader language of paragraph 23. It is found in the part of the petition identifying the five causes of action, which are labeled as “Counts.” Only the language in one paragraph, in one count, supports the view that only current owners are in the class. Alleging trespass in Count 3, Ar-buckle claims “Plaintiff, and the Class, is the rightful owners of the mineral estates of the Properties by virtue of a valid foreclosure action.” Arbuckle’s employment of the present tense (even if also the singular verb) supports that Arbuckle intended its class to include only current owners.
The dissent finds further support for the narrow definition in paragraphs 42 and 43, which are found in Count 3. We disagree. In paragraph 42, Arbuckle alleges that the defendants’ acts of trespass “have caused, and continue to cause damage to Plaintiff and the Class.” The dissent contends this sentence could be interpreted to mean that all proposed class members continue to experience damage. The stated language, however, is not at all inconsistent with the broad definition. It might just as easily mean damage was previously caused to some class members and continues to occur for others. Further, in paragraph 43, Arbuckle “seeks injunctive relief for themselves and the Class” to prevent further acts of trespass. Conceivably, injunctive relief for all class members implies that all class members continue to suffer acts of trespass. True, the proposed class may seek - different remedies: former owners will seek money damages for past harms, and current owners will seek money damages for past and current harms plus injunctive relief. The district court may eventually have to decide whether the class can and/or must be split into subclasses pursuant to Federal Rule of Civil Procedure 23(c)(4). Still, “the fact that a class is overbroad and should be divided into subclasses is not in itself a reason for refusing to certify the case as a class action,” let alone a reason to divest a federal court of jurisdiction. See Culver v. City of Milwaukee, 277 F.3d 908, 912 (7th Cir.2002).
In none of the other four Counts is there support for either class definition. Count 1, seeking termination of the leases, asserts that each class member has an interest under a deed or contract, and that the prior oil and gas leases do not bind the member. Count 2 seeks an injunction and an accounting for production taken under invalid leases, and an order that proceeds from future production go to the class. Count 4 alleges conversion, and claims that class members are the rightful owners of proceeds of production. Finally, Count 5 claims that defendants have unpaid royalties due to the class. None of these remaining Counts shed any light on the correct class definition.
The petition is ambiguous. Arbuckle asks us to rely on one of our recent unpub *342 lished opinions as authority that a narrow definition trumps a broad definition. See In re Chinese-Manufactured Drywall Prods. Liab. Litig., No. 14-31355, 627 Fed.Appx. 319, 2015 WL 5771919 (5th Cir. Oct. 2, 2015). The case interprets the scope of a settlement class to determine whether a new claim is precluded under the terms of former settlement agreements. On appeal, we noted that the past settlement agreements contained conflicting language about the scope of the settlement classes, defining the class broadly in parts and narrowly in others. Id. at 322-23, 2015 WL 5771919, at *3. We noted that, when reviewing the scope of a settlement agreement, “the ‘Class Member’ definitions are not considered in isolation; instead they are to be considered in the context of the agreements as a whole.” Id. at 322, 2015 WL 5771919, at *2. We then relied on other provisions in the settlement agreement to show the class was intended to be limited. These other provisions, governing the allocation of settlement funds, could not be properly effectuated under the defendants’ proposed broader definition.
Chinese-Manufactured Drywall does not affect our analysis. First, it involves interpretation of a settlement agreement, i.e., a contract, not pleadings. More importantly, it stands for the uncontroversial idea that context matters. We should look to the entire relevant document when interpreting ambiguous class size definitions. That guiding principle does not dictate how this panel should resolve the present action, where two equally plausible class size definitions are included in the same petition.
Finally, that opinion deemed it “nonsensical” to find the class included members who were “never entitled to a benefit under” the settlement agreements: “It spurns simple reasoning to require individuals to opt out of a settlement agreement under which they were never entitled to compensation.” Id. at 322-23, 2015 WL 5771919, at *3. Conversely, in our case, Arbuckle’s petition seeks money damages for all production “since the later of 2004 or from the first production,” which if awarded would benefit both former and current owners.
We summarize the conflicting indications in Arbuckle’s petition. The formal class definition includes “all” those who were purchasers of interests as a result of foreclosure. A different part of the petition limits the class to current owners. One paragraph in one of the causes of action is written in terms that seem reasonably limited, primarily, but not entirely, to current owners. The other causes of action include no self-contained limitations and would equally apply to the broad or narrow definition.

III. Ambiguity and the Rule Favoring Federal Jurisdiction

A party seeking removal must establish federal jurisdiction. See Hood ex rel. Miss. v. JP Morgan Chase & Co., 737 F.3d 78, 84-85 (5th Cir.2013). When CAFA’s basic requirements are satisfied, as they are in this case, and where a party seeks remand under an exception to federal jurisdiction, that party “must prove that the CAFA exceptions to federal jurisdiction divest the district court of subject matter jurisdiction.” Preston, 485 F.3d at 797. Underlying our analysis is our need to resolve lingering doubts in favor of exercising federal jurisdiction when an exception to jurisdiction is asserted. See Opel-ousas, 655 F.3d at 360.
Arbuckle’s petition contains two conflicting class definitions. After reviewing Ar-buckle’s petition, the parties’ briefs, and the record, we have no basis to conclude the class is only of current owners, or *343 conversely that it covered all post-foreclosure owners including interim owners. Further, plaintiffs concede there is no evidence that, under the broad definition, over two-thirds of the class are Texas citizens.
Because the class that the petition at the time of removal sought to have certified is not clearly limited to current owners, and with inadequate evidence of the citizenship of the interim owners in the broader class, Arbuckle has not proven that the exception for local controversies applies.
We REVERSE the judgment of the district court remanding this case to state court. The case is REMANDED to district court, and we DIRECT that the case be reinstated on that court’s docket.

. Litigation in Texas state courts begins with a "petition,” rather than a “complaint.” Tex.R. Civ. P. 45.

. Arbuckle's petition includes these claims: (1) request for a declaration that, under Texas law, pre-foreclosure leases terminate when mortgages are foreclosed upon; (2) trespass and a request for an injunction to prevent future trespass; (3) conversion; (4) money had and received; and (5) exemplary damages based on intentional trespass.

. The dissent argues Evans made a “critical error” in its analysis by relying on an inapplicable portion of a Senate Report. We do not rely on legislative history. We point out, though, that our holding is consistent with the cited Senate Report, which recognizes the expansion of federal jurisdiction over class actions. See S. Rep. No. 109-14 (2005). The report states that "[b]ecause interstate class actions typically involve more people, more money, and more interstate commerce ramifications than any other type of lawsuit, the [Judiciary] Committee firmly believes that such cases properly belong in federal court.” Id. at 5. Moreover, in the context of establishing federal CAFA jurisdiction under subsections 1332(d)(5)(A), (d)(5)(B), and (d)(6), the report indicates ambiguities should be resolved in favor of exercising federal jurisdiction. See id. at 42 (directing courts to "proceed cautiously before declining federal jurisdiction,” and to "err in favor of exercising jurisdiction” when a court is uncertain whether jurisdictional requirements are satisfied). These examples are particularly compelling because, when establishing CAFA jurisdiction, the party seeking removal has the burden to prove provisions, including subsections 1332(d)(5) and (d)(6), are satisfied. See Rainbow Gun Club, Inc. v. Denbury Onshore, L.L.C., 760 F.3d 405, 409 n. 3 (5th Cir.2014). At a minimum, once the burden shifts to the party seeking remand as it did in this case, courts must still rule in favor of exercising jurisdiction when faced with uncertainty.

. The defendants claim Arbuekle presented "unreliable” expert testimony in assessing the citizenship of the putative class under the narrow class definition. The defendants did not previously challenge Arbuckle’s proof of citizenship under the narrow definition in their petition for permission to appeal. Moreover, the argument is relegated to a footnote in the defendants' brief. Arguments subordinated in a footnote are "insufficiently addressed in the body of the brief,” and thus are waived. Bridas S.A.P.I.C. v. Gov’t of Turkm., 345 F.3d 347, 356 n. 7 (5th Cir.2003). Our finding of waiver, even though we express it in a footnote, is nonetheless dispositive.

. The term "non-excluded persons or entities” is defined in paragraphs 23 and 25 of the petition. Neither definition sheds any light on the questions we confront.

. The dissent suggests paragraph 23 may be nothing more than a list of "ways that a current owner might have acquired his mineral interest.” A significant problem with that view is the use of the word all at the start of the paragraph. If the paragraph said the Class is comprised of "persons or entities” who acquired mineral interests in a specified manner, that would imply some, but not all, qualified persons or entities are actually members of the class. Paragraph 23, however, states the Class is comprised of all non-excluded persons or entities who satisfy the listed qualifications, not a subset of those who qualify. Moreover, paragraph 23 is not presented as an afterthought, i.e., a section which illuminates by examples an earlier class definition. It explicitly identifies the class that is to be certified.