# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 27, 2022

Lyle W. Cayce
Clerk

No. 22-30177

Anthony J. Stewart; Diane Raley; Tomika Jordan;
Sheena Altine; Tyelga J. Kearney; *et al.*,

*Plaintiffs—Appellees*,

*versus*

Entergy Corporation; Entergy New Orleans, L.L.C.;
Entergy Louisiana, L.L.C.,

*Defendants—Appellants*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:21-CV-1834

Before Stewart, Haynes, and Ho, *Circuit Judges*.

Per Curiam:

Plaintiffs-Appellees, individuals who were adversely affected by power outages following Hurricane Ida, filed a class action lawsuit in state court against Defendants-Appellants Entergy Corporation, Entergy New Orleans, L.L.C., and Entergy Louisiana, L.L.C. (collectively, "Entergy"). Plaintiffs allege that Entergy negligently designed, operated, and maintained the electricity transmission system, which led to power outages in the wake of the hurricane. Entergy removed this case to federal court under 28 U.S.C.

§ 1441, asserting three bases for original jurisdiction: federal question jurisdiction, 28 U.S.C. § 1331; jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1453(b); and federal bankruptcy jurisdiction, 28 U.S.C. § 1452. Plaintiffs moved to remand, and the district court granted the remand motion.

Typically, a case's foray into federal court ends there—an order remanding a case to state court is generally not appealable. 28 U.S.C. § 1447(d). But, for actions removed under CAFA, appellate courts "may accept an appeal from an order of a district court granting or denying a motion to remand a class action to the State court from which it was removed if application is made to the court of appeals" within ten days after entry of the remand order. *Id.* § 1453(c)(1). Entergy timely petitioned for such an appeal, and we granted that request.

For the reasons set forth below, we hold that CAFA's local controversy and home state exceptions bar federal jurisdiction. We also hold that, under governing precedent, our appellate jurisdiction extends *only* to the CAFA-related claim. We, therefore, AFFIRM in part and DISMISS in part.

## I.    CAFA Jurisdiction

"CAFA provides the federal district courts with 'original jurisdiction' to hear a 'class action' if the class has more than 100 members, the parties are minimally diverse, and the 'matter in controversy exceeds the sum or value of $5,000,000.'" *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013) (quoting 28 U.S.C. § 1332(d)(2), (d)(5)(B)). However, under the local controversy and home state exceptions to CAFA, a "district court shall decline to exercise jurisdiction" over a class action in which "greater than two-thirds" of proposed class members are citizens of the state in which the action was originally filed, and certain other procedural requirements are

met.  28 U.S.C. § 1332(d)(4).[1]  The party seeking remand bears the burden of establishing, by a preponderance of the evidence, that the local controversy and home state citizenship requirements are met.  *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.* (*Preston I*), 485 F.3d 804, 814 (5th Cir. 2007).

Plaintiffs concede that CAFA's statutory requirements are met but assert that the local controversy and home state exceptions preclude federal jurisdiction.  Concluding, among other things, that more than two-thirds of the proposed class members are Louisiana citizens, the district court agreed and granted Plaintiffs' remand motion.  We review that jurisdictional determination de novo but review factual findings regarding the citizenship of parties for clear error.  *See Williams v. Homeland Ins. Co.*, 657 F.3d 287, 290 (5th Cir. 2011); *Preston I*, 485 F.3d at 809.

To determine whether two-thirds of a proposed class are citizens of the state in which a class action was originally filed, we must first define the class.  To do so, we review the allegations set out in Plaintiffs' petition at the time of removal.  *See Arbuckle Mountain Ranch, Inc. v. Chesapeake Energy Corp.*, 810 F.3d 335, 341 (5th Cir. 2016).  Here, the petition asserts that the class action is brought "on behalf of all residents of the East Bank of Jefferson Parish and all residents of Orleans Parish."  The petition then states: "Until

---

[1] The local controversy exception requires remand if Plaintiffs establish that (1) greater than two-thirds of the class members are citizens of Louisiana; (2) at least one defendant "from whom significant relief is sought" and "whose alleged conduct forms a significant basis for the claims" is a citizen of Louisiana; (3) the principal injuries complained of occurred in Louisiana; and (4) "during the 3-year period preceding the filing of the class action, no other class action has been filed asserting the same or similar factual allegations" against any of the defendants.  *See* 28 U.S.C. § 1332(d)(4)(A).  The home state exception requires remand when "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants" are citizens of Louisiana.  *See id.* § 1332(d)(4)(B).  Because only the two-thirds citizenship requirement is in dispute on this appeal, our analysis is limited to that issue.

a more precise determination is made of all residents of the East Bank of Jefferson Parish and all residents of Orleans Parish affected by the failure of the Transmission System, the Plaintiffs allege that the class consists of all persons affected by power outages and residing in the Parishes of within the service area of [sic] Entergy who sustained personal, mental, and economic damages and/or inconvenience as a result of the failure of the Transmission System resulting from Hurricane Ida."

We conclude that, whatever the Plaintiffs may have meant, we must construe the petition as written and the proper reading of these two paragraphs, the first one limiting the class to portions of Jefferson and all of Orleans parish and the second one referencing those parishes and then referring to "the Parishes," i.e., those parishes, means that the class definition is quite limited in scope: it consists of Louisiana residents and businesses in the East Bank of Jefferson and Orleans Parishes affected by the relevant power outages. Focusing narrowly on the phrase "all persons" and the allegation that Entergy "provide[s] services to 3 million customers in 4 states," Entergy argues that the class definition must include persons residing outside Louisiana. That interpretation, however, is belied by a plain reading of the petition.

Even if one could read the petition more broadly than the conclusion above, of the four states served by Entergy, only Louisiana uses the word "parish" to describe its geographic subdivisions. This should end the matter, but even if we set this compelling fact aside (as Entergy urges us to do) our conclusion remains the same. The petition states that the class action is brought on behalf of residents of two specific parishes; makes repeated references to Louisiana generally and southeast Louisiana specifically;[2] and

---

[2] In addition to the petition's many references to Louisiana, we note its eleven references to southeast Louisiana specifically. The petition alleges that: (1) Entergy's

No. 22-30177

describes how Entergy's alleged negligence affected the Ninth Ward, the French Quarter, and the Central Business District—all neighborhoods located within New Orleans. Even if, as Entergy suggests, the class might include residents outside East Bank of Jefferson and Orleans Parishes, it is still limited to those residents in *parishes* served by Entergy (i.e., those in Louisiana). Considering the petition as a whole, we cannot determine that other states are involved.

With the class defined, we next determine if the district court clearly erred in concluding that two-thirds of proposed class members are Louisiana citizens. A person's domicile, demonstrated by residence and the intent to remain, "serves a dual function as his state of citizenship." *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.* (*Preston II*), 485 F.3d 793, 797–98 (5th Cir. 2007). At the preliminary stages of a class action, the evidentiary standard for establishing the domicile of more than 100 plaintiffs "must be based on practicality and reasonableness." *Preston I*, 485 F.3d at 816. Accordingly, a district court "may make a reasonable assumption of CAFA's citizenship

---

transmission system failure "left southeast Louisiana without power"; (2) Entergy is aware of climate change affecting southeast Louisiana; (3) Entergy made the decision to service southeast Louisiana; (4) Entergy chose not to invest in underground electricity transmission, which "could have assured regular, consistent, and sustained protected service" in southeast Louisiana; (5) Entergy is the sole provider of electricity to southeast Louisiana; (6) Entergy's transmission system provides electricity to southeast Louisiana; (7) a 2010 Department of Energy study was directed in part to Entergy's transmission system in southeast Louisiana; (8) prior to Hurricane Ida, Entergy asserted that its southeast Louisiana systems could withstand winds of 150 mph; (9) Hurricane Ida passed through southeast Louisiana; (10) Entergy's failure to exercise reasonable care resulted in the widespread outages in southeast Louisiana; and (11) the citizens of southeast Louisiana are not liable for any contributory negligence for the power outages or corresponding damages.

Moreover, the petition provides background information on Entergy—specifically that Entergy has forty electric power plants in twelve states and provides service to customers in four states—but it does not discuss damages occurring in any other state.

requirement from evidence that indicates the probable citizenship of the proposed class." *Williams*, 657 F.3d at 291 (internal quotation marks and citation omitted). Moreover, "where a proposed class is discrete in nature, a commonsense presumption should be utilized in determining whether citizenship requirements have been met." *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 573 (5th Cir. 2011) (per curiam).

As aforementioned, based on the class definition and facts alleged, it's evident that this class will consist overwhelmingly of Louisiana citizens and corporations. To support that reasonable assumption, Plaintiffs adduced an informal survey establishing that many of the proposed class members are indeed Louisiana citizens.[3] Entergy takes issue with the survey, asserting that its informal nature renders it "essentially useless" in assessing the citizenship of the full proposed class. We understand Entergy's arguments regarding the survey's methodology and reliability, but its conclusions merely support what a commonsense presumption based on the class definition and the factual allegations dictates. At the very least, it was not clearly erroneous for the district court to rely on the survey in reaching its conclusion that at least two-thirds of the proposed class members are Louisiana citizens.

Our decision today accords with our prior precedent holding that a class action stemming from a hurricane hitting southeast Louisiana was a truly local controversy.[4] *See Preston I*, 485 F.3d at 821–22. Here, we similarly

---

[3] The survey results established that eighty-two proposed class members are Louisiana citizens: those individuals are physically present in Louisiana; work in Louisiana; and exercise civil and political rights, pay taxes, own property, maintain bank accounts, and belong to churches and clubs in Louisiana. These are all factors used to determine domicile. *See Coury v. Prot*, 85 F.3d 244, 251 (5th Cir. 1996).

[4] *Preston II* was a companion case to *Preston I* involving the same class and the same factual circumstances but asserting claims against a different defendant hospital. 485 F.3d

conclude that "the crux of this case revolves around a narrowly defined class and claims stemming from a localized chain of events." *Id.* at 821. It's quite clear this controversy uniquely affects Louisiana to the exclusion of other states. Accordingly, the district court did not clearly err in assuming that at least two-thirds of proposed class members are Louisiana citizens. CAFA's local controversy and home state exceptions therefore apply, and this case was properly remanded to state court.

## II.     Other Potential Appellate Jurisdiction

We have consistently held that § 1453(c)(1) does not grant us jurisdiction to consider non-CAFA-related grounds for removal when reviewing a remand order. *See, e.g.*, *City of Walker v. Louisiana ex rel Dep't of Transp. & Dev.*, 877 F.3d 563, 566–67 (5th Cir. 2017); *Patterson v. Dean Morris, L.L.P.*, 448 F.3d 736, 739 (5th Cir. 2006); *Perritt v. Westlake Vinyls Co., L.P.*, 562 F. App'x 228, 231 (5th Cir. 2014) (per curiam) ("[W]e do not have jurisdiction to review the district court's decision to remand for lack of diversity jurisdiction, but we may review its decision to remand for lack of CAFA jurisdiction." (quotation omitted)).

---

at 793. Despite the similarities between the cases, we held that the plaintiffs' evidence in *Preston II*—a list of addresses from class members' prior medical records—was insufficient to prove citizenship and accordingly held that CAFA's exceptions did not apply. *Id.* at 798–801. In reaching that conclusion, we noted that the petition in that case was filed one year after Hurricane Katrina, and, because of the mass relocation that took place post-Katrina, the court was unable to presume that class members had maintained their Louisiana domiciles. *Id.* at 799–802. Though Plaintiffs' petition here indicates that many individuals affected by the power outages "evacuate[d]" to other states, there are no facts alleged or other evidence in the record indicating that a Katrina-style "mass relocation" occurred after Hurricane Ida. Katrina caused thousands of deaths and massive destruction, whereas Ida, while horrible, did not have that same result. In any event, to the contrary, the survey—though informal—supports an inference that those affected by Hurricane Ida power outages have maintained Louisiana domiciles, even if they were temporarily residing elsewhere until their power returned.

Nevertheless, Entergy urges us to review its non-CAFA-related jurisdictional assertions, arguing that the Supreme Court's recent decision in *BP P.L.C. v. Mayor of Baltimore*, 141 S. Ct. 1532 (2021), overrules our prior precedent. We disagree and, accordingly, must follow our prior precedent.

In *BP*, the Supreme Court considered whether § 1447(d)—which authorizes appeal of "an order remanding a case to the State court from which it was removed pursuant to section 1442 [the federal officer removal statute] or 1443 [the civil rights removal statute]"—extends appellate review to the entire remand order or limits it to the portions of the remand order related to §§ 1442 and 1443. 141 S. Ct. at 1536. The Court concluded that when a district court's remand order rejects multiple grounds for removal, § 1447(d) "authorizes a court of appeals to review each and every one of them" because "the statute allows courts of appeals to examine the whole of a district court's 'order,' not just some of its parts or pieces." *Id.* at 1538. Entergy seizes on this reasoning. Because CAFA also permits appeal from "an order," Entergy argues, *BP*'s holding on § 1447(d) necessarily extends to § 1453(c)(1) and grants us jurisdiction to review all the issues decided in the remand order.

Some of our sister circuits read § 1453(c)(1) this way, *see, e.g.*, *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 451–52 (7th Cir. 2005), but we do not think *BP*—which concerned a statute not at issue here and did not refer to § 1453(c)(1) even in passing—allows us to depart from our precedent. Under the well-settled rule of orderliness, "three-judge panels" must "abide by a prior Fifth Circuit decision until the decision is overruled, expressly or implicitly, by either the United States Supreme Court or by the Fifth Circuit sitting en banc." *Cent. Pines Land Co. v. United States*, 274 F.3d 881, 893 (5th Cir. 2001) (quotation omitted). "[Our] precedent is implicitly overruled if a subsequent Supreme Court opinion establishes a rule of law inconsistent with that precedent." *Gahagan v. U.S. Citizenship & Immigr.*

*Servs.*, 911 F.3d 298, 302 (5th Cir. 2018) (internal quotation marks and citation omitted). But that decision must be "unequivocal[]." *Id.* We conclude that § 1447(d) is sufficiently distinct from § 1453(c)(1) and therefore that *BP* has not unequivocally overruled our precedent or established a law inconsistent with it.

We begin with the text. Though § 1453(c)(1) does not expressly limit appellate review to issues solely related to CAFA, it is textually distinct from § 1447(d). Unlike § 1447(d) as to which the usual appeal timing implicitly applies, § 1453(c) sets an express and short ten-day time limit on a party requesting permission to appeal. 28 U.S.C. § 1453(c)(1). If the permission is granted (which is discretionary in the appeals court), it *also* requires appellate courts to accelerate their determination of such appeals. *See id.* § 1453(c)(2) (requiring courts of appeals to render a judgment no later than sixty days after the appeal is filed); *see also Patterson v. Dean Morris, L.L.P.*, 444 F.3d 365, 368 (5th Cir. 2006) (appeal is deemed filed once permission is granted: "[I]t is the order granting leave to appeal that triggers the sixty-day period for a court of appeals to enter judgment."). These very short and narrow time limits have practical implications—to exercise our discretion to even hear CAFA-related remand appeals, we "must weigh the time taken from earlier-filed appeals to tend to the CAFA appeal." *Alvarez v. Midland Credit Mgmt., Inc.*, 585 F.3d 890, 894 (5th Cir. 2009). Compare these CAFA-specific efficiency considerations with § 1447(d). In *BP*, the Court noted that inefficiency in the context of § 1447(d) was a mere policy concern that could not "overcome a clear statutory directive." 141 S. Ct. at 1542 (internal quotation marks and citation omitted). But in the case of § 1453(c), a swift and efficient disposition *is* the statutory directive and, as such, is memorialized in its text. Taking additional time to review non-CAFA-related claims under § 1453(c) would undoubtedly undermine that directive.

Moreover, we note that review under § 1447(d) is mandatory, while, as explained above, review under § 1453(c)(1) is permissive. *Compare* 28 U.S.C. § 1447(d) ("An order remanding a case . . . pursuant to section 1442 or 1443 of this title *shall* be reviewable by appeal or otherwise." (emphasis added)), *with id.* § 1453(c)(1) ("[A] court of appeals *may* accept an appeal from an order of a district court granting or denying a motion to remand a class action . . . ." (emphasis added)). This textual difference likely stems from the unique purpose of § 1453(c), which was enacted to help generate appellate law interpreting CAFA, but only if that could be done efficiently. *See* S. REP. NO. 109-14, at 49 (2005) ("The purpose of this provision is to develop a body of appellate law interpreting the legislation without unduly delaying the litigation of class actions."). That unique purpose further supports our conclusion that *BP*'s holding does not extend to remand orders under § 1453(c)(1) and has not unequivocally overruled our precedent interpreting that statute. *See Gahagan*, 911 F.3d at 302.

For the reasons above, we conclude that *BP* did not overrule our prior precedent, so we are required to continue following the rule "that our jurisdiction to review a CAFA remand order stops at the edge of the CAFA portion of the order." *City of Walker*, 877 F.3d at 567. Thus, we dismiss that portion of the appeal. As to the CAFA portion of the district court's remand order here, we agree that the local controversy and home state exceptions bar federal jurisdiction, so we affirm that portion.

AFFIRMED in part and DISMISSED in part.