# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 21, 2025

Lyle W. Cayce
Clerk

———————

No. 23-10374

———————

Charles Epley, *also known as* Pierryck Castellazzi,

*Plaintiff—Appellant*,

*versus*

Daniel Lopez; FNU LNU, *Duty Medical Official, also known as Blue*,

*Defendants—Appellees*.

———————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 1:18-CV-115

———————————————————

Before Clement, Graves, and Ramirez, *Circuit Judges*.
Irma Carrillo Ramirez, *Circuit Judge*:[*]

Charles Epley, a former Texas state prisoner, sued numerous officials at three different prisons in which he had been incarcerated, alleging violations of his constitutional rights. He challenges the severance and transfer of his claims against the officials at one prison to the division in which they were geographically located, as well as that division's dismissal of his claims against those officials. We AFFIRM.

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-10374

# I

For 28 years, Epley was a prisoner of the Texas Department of Criminal Justice's Institutional Division ("TDCJ"). During an attack in 1994, he suffered a traumatic brain injury ("TBI") and the onset of Post-Traumatic Stress Disorder ("PTSD"). As a result, he received a single-cell medical designation, i.e., housing in a typical cell without cellmates.

## A

On June 2, 2016, Epley was transferred to the James Lynaugh Unit in Fort Stockton, located in the Pecos Division of the Western District of Texas. Hours later, he was transferred to the John Montford Unit, a psychiatric correctional facility in Lubbock, located in the Lubbock Division of the Northern District of Texas.

Lubbock officials placed Epley in a single-occupant cell for his first four days; they then attempted to move him to a cell occupied by three other prisoners. Epley claims that when he objected, the officials used "chemical agents and a 5 man team . . . to gain compliance from [him]." When he refused to enter the new cell, officials placed Epley "naked, except for [] underwear, inside an empty day-room where [he] was overwhelmed with TBI/PTSD symptoms." Officials then administered a chemical agent "through a special opening in the door" to the room, filling it with gas and reportedly causing Epley to feel as though he was suffocating. Epley alleges that several armed guards then entered the room and beat him, causing "intense pain in [Epley's] head, face, nose, ear, [and] front teeth" and "breaking several ribs on [Epley's] right side." That night, he experienced additional symptoms as a result of the attack; he "felt very dizzy[,]" "lost consciousness[,]" and "vomited several times during the night."

The next morning, officials transported Epley to the French Robertson Unit in Abilene, located in the Abilene Division of the Northern

2

No. 23-10374

District of Texas. Epley alleges that his injuries caused him "to experience excruciating pain during the lengthy (believed to be about 170 miles long) and difficult" bus ride to Abilene, and that he should have been transported in a medical van rather than a standard prison transport bus. The transport bus driver allegedly passed along orders from Lubbock officials to prevent Epley from obtaining any medical care in Abilene.

In Abilene, Epley alerted several prison officials to his injuries and requested medical attention. Other prisoners also noticed Epley's injuries and asked prison officials to attend to him. Epley claims prison officials told Sergeant Daniel Lopez ("Sergeant Lopez") that he had been beaten by Lubbock officials and that he should not receive any medical care. Sergeant Lopez "indicated that he understood what he had to do to deny [Epley] much-needed medical treatment, and that he [would] block [Epley's] access to medical care." Sergeant Lopez allegedly refused to notify medical personnel that Epley needed treatment even after Epley and other prisoners told Sergeant Lopez about the severity of Epley's injuries. Sergeant Lopez then "threatened [Epley] with additional harm if he did not immediately and silently enter a cell." Epley alleges that Sergeant Lopez's conduct showed his involvement in a conspiracy with other prison officials to deny Epley the care he needed.

An unidentified medical assistant to whom Epley referred as "Blue" dispensed medication to prisoners in the Abilene prison. When she saw Epley in his cell, she was "horrified" and informed him that she would try to alert medical staff so that his injuries could be treated. Epley alleges he was never seen by any medical official in Abilene and Blue ignored his complaints after their first conversation. Epley alleges that Blue was also part of a conspiracy intended to prevent him from receiving the treatment he needed.

3

No. 23-10374

Epley was later transported back to Fort Stockton. There, he reported the beating he sustained in Lubbock to prison officials, but he obtained no relief through the grievance process.

**B**

After his release from prison, Epley filed this suit in May 2018 in the Dallas Division of the Northern District of Texas. That division then transferred the case to the Lubbock Division.

On June 6, 2018, Epley amended his complaint, naming approximately 40 officials from all three prison facilities. In relevant part, he asserted claims under 42 U.S.C. § 1983 for violations of his First, Eighth, and Fourteenth Amendment rights; claims under the Americans with Disabilities Act ("ADA") and Rehabilitation Act; state law negligence claims; and conspiracy claims under 42 U.S.C. § 1985.

In August 2018, the Lubbock Division concluded that Epley had filed his claims against the Abilene and Fort Stockton officials "in the wrong division and/or district." It found that because Epley alleged that Appellees had violated his rights in Abilene, "'a substantial part of the events or omissions giving rise' to these claims occurred in the Abilene Division." The court severed "all claims against [Appellees] alleged to have occurred" in Abilene and transferred them to the Abilene Division "in accordance with 28 U.S.C. § 1406(a)." It also severed and transferred the claims against the Fort Stockton officials to the Pecos Division. The Lubbock Division retained the claims against all other defendants.

Epley objected to the severance-and-transfer order in the Lubbock Division and moved for its reconsideration. On reconsideration, the magistrate judge concluded in relevant part:

> Epley offers no credible basis for the court to reconsider its initial determination that the transferred claims were filed []

4

in . . . a location that, in the interest of justice, required transfer for the convenience of the majority of the parties and witnesses (Abilene defendants). In the court's view, the overall availability and convenience of the witnesses and parties, the cost of obtaining witness attendance, the relative ease of access to proof, and the place of the alleged wrong, outweigh any other considerations for location of the appropriate forum. *See* 28 U.S.C. § 1404(a); *Von Graffenreid v. Craig*, 246 F. Supp. 2d 553, 562 (N.D. Tex. 2003) (applying these and other factors in analyzing venue under § 1404(a)).

Meanwhile, the Abilene Division ordered Epley to file a second amended complaint "limited to the claims against Sergeant Lopez and Blue that were severed from the prior action and transferred" to Abilene, which would "supersede and entirely replace the amended complaint." Epley moved for leave to add defendants to his amended complaint, which had not yet been filed. He reiterated his position that officials at all three prisons had conspired to violate his constitutional rights and requested leave "to add, in his Amended Complaint . . ., ALL the Texas prison officials who caused him severe harm at the [Abilene] prison." Epley then filed his second amended complaint.

The Abilene Division denied Epley's motion for leave to add defendants because it concluded that Epley effectively wanted it to reconsider the Lubbock Division's severance-and-transfer order. Because "that [was] not [its] role," and the defendants Epley sought to add were already defendants in the pending Lubbock proceedings, the court denied the motion. It also overruled Epley's subsequent objections to the denial of his motion.

The Abilene Division subsequently ordered Epley to respond to a questionnaire to develop the factual allegations in Epley's second amended complaint more fully. After requesting and receiving an extension of time to

No. 23-10374

respond, Epley filed his responses and several exhibits, in which he fleshed out his allegations regarding the failure to provide proper bedding and restroom accommodations. He explained that Blue first noticed his bruises when she brought him medications that were intended to treat ailments predating the alleged June 2016 attack.

For the first time, Epley explained that he had become a target of abuse from fellow prisoners and prison officials because he wanted to sue TDCJ to vindicate his right to grow long cranial hairs pursuant to his practice of "an ancient European Nature-based religion." Officials then allegedly "colluded to retaliate by having [him] transferred to [Fort Stockton.]"

The Abilene Division ordered Epley to complete a second questionnaire. Following another extension of time to respond, Epley responded to some of the questions. In relevant part, he explained his understanding that Appellees did not have the authority or obligation to provide medical treatment. Instead, they were obligated to report Epley's injuries to medical professionals. He also provided more detail about his interactions with Sergeant Lopez. For instance, Epley alleged he showed Sergeant Lopez the visible bruises on his face and back, and when he told Sergeant Lopez that Lubbock officials had beaten him, Sergeant Lopez "ordered [Epley] to shut up and to follow him to [Epley's] 'cage'" or he would be beaten in Abilene, too.

As for Blue, Epley alleged "there is no available proof that 'Blue' actually . . . alerted anyone." He also maintained that his disabilities should have been accommodated while he was in Abilene by housing him in an in-patient bed in the infirmary rather than just a single-occupancy cell or a regular cell with other prisoners. Finally, he attempted to explain his Fourteenth Amendment claim, noting that he was asserting claims under the Equal Protection Clause rather than the Due Process Clause.

No. 23-10374

In February 2023, a magistrate judge recommended dismissal of Epley's claims against Appellees under 28 U.S.C. §§ 1915 and 1915A. The magistrate judge recommended dismissing Epley's First, Eighth, and Fourteenth Amendment claims and conspiracy claims,[1] and his claims for failure to accommodate his disabilities, with prejudice for frivolousness and failure to state a claim. The magistrate judge also recommended dismissing Epley's state law claims without prejudice for lack of subject-matter jurisdiction. The district judge adopted the recommendation in full, over Epley's objection, and dismissed the complaint. This appeal followed.

## II

Epley argues that when it severed his case, the Lubbock Division "failed to apply either § 1404(a) or this Court's precedent on combined severance-and-transfer decisions[,]" and that "severance and transfer [] were improper under both analyses[,]" including the "scant reconsideration analysis[,]" because the § 1404(a) factors did not favor severance and transfer.[2]

Epley previously challenged the Lubbock Division's severance-and-transfer analysis during his appeal of the Pecos Division's dismissal of his claims against the Fort Stockton officials. *See Epley v. Itie*, No. 21-50574, 2024 WL 864304, at *1 n.1 (5th Cir. Feb. 29, 2024). That same analysis also applied to the claims against Appellees—the Lubbock Division analyzed the severance-and-transfer of the claims against the officials in both Fort Stockton and Abilene together. On reconsideration, it also analyzed the severance-and-transfers to both the Abilene and Pecos Divisions together.

---

[1] Epley does not challenge the district court's dismissal of his conspiracy claims.

[2] Epley contends that "effective relief remains possible here because the severed Lubbock action is still pending," and he has been appointed counsel to represent him there.

7

In a footnote, *Itie* "declined to consider [Epley's] arguments" concerning the severance-and-transfer to the Pecos Division because he "failed to seek mandamus after the transfer occurred." 2024 WL 864304, at *1 n.1 (citing *Def. Distributed v. Bruck*, 30 F.4th 414, 423, 426 n.13 (5th Cir. 2022)). *Bruck* held that "in this circuit, mandamus is the prescribed vehicle for reviewing rulings of transfers of cases pursuant to 28 U.S.C. § 1404(a)." 30 F.4th at 423. *Itie* appears to have implicitly found that the Lubbock Division transferred Epley's claims under § 1404(a).

We need not decide whether the footnote in *Itie* is sufficient to invoke the law of the case doctrine[3] here, precluding our consideration of the initial and reconsideration orders. *See Trans World Airlines, Inc. v. Morales*, 949 F.2d 141, 144 (5th Cir. 1991) (application of the doctrine is discretionary and "more likely . . . when the prior opinion was apparently well-considered."). We see no reason to reach a different result.

"'[A] district court may transfer a case upon a motion or sua sponte.'" *Moler v. Wells*, 18 F.4th 162, 167 n.8 (5th Cir. 2021) (quoting *Caldwell v. Palmetto State Sav. Bank of S.C.*, 811 F.2d 916, 919 (5th Cir. 1987) (per curiam) (in turn citing § 1404 and § 1406)). Courts have broad discretion in deciding whether to order a transfer under either statute. *Caldwell*, 811 F.2d at 919 (citations omitted); *see also McKinney v. McDuffie*, 789 F. App'x 413, 417 (5th Cir. 2019) (per curiam) (finding that the magistrate judge did not abuse discretion in preliminary screening by severing the prisoner plaintiff's claim of deliberate indifference and transferring it to the district "where a substantial part of the events giving

---

[3] "[A] decision of a legal issue or issues by an appellate court establishes the 'law of the case' and must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal in the appellate court . . . ." *White v. Murtha*, 377 F.2d 428, 431–32 (5th Cir. 1967).

rise to his claim occurred"). Generally, "[a] district court abuses its discretion if it: (1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 310 (5th Cir. 2008) (en banc) (quoting *McClure v. Ashcroft*, 335 F.3d 404, 408 (5th Cir. 2003)).

Here, although the initial transfer order cited and appeared to rely on § 1406(a), the court's reconsideration order specifically referred to its "initial determination" that transfer was appropriate under § 1404(a) and explained how the § 1404(a) factors[4] weighed in favor of transfer of the claims against the officials in Fort Stockton and Abilene. The order implicitly acknowledged that it had cited § 1406(a) in error. And Epley expressly challenges the § 1404(a) analysis—he does not expressly mention § 1406(a).

We agree with *Itie* that *Bruck* required Epley to seek mandamus after the § 1404(a) transfer, and we likewise decline to consider his arguments. *See* 2024 WL 864304, at *1 n.1.

---

[4] The § 1404(a) factors include

(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; (4) all other practical problems that make trial of a case easy, expeditious and inexpensive; (5) the administrative difficulties flowing from court congestion; (6) the local interest in having localized interests decided at home; (7) the familiarity of the forum with the law that will govern the case; and (8) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law.

*In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013) (internal quotation marks omitted and alteration adopted) (quoting *In re Volkswagen*, 545 F.3d at 315).

No. 23-10374

### III

Epley argues that the Abilene court erred in denying his motion for leave to add other defendants to the Abilene proceedings.

We review a district court's denial of a motion for leave to amend to add defendants for an abuse of discretion. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). "A district court possesses broad discretion in its decision whether to permit" amendments to pleadings. *Crostley v. Lamar County*, 717 F.3d 410, 420 (5th Cir. 2013) (citing *McLean v. Int'l Harvester Co.*, 817 F.2d 1214, 1224 (5th Cir. 1987)).

Epley's motion vaguely suggested that he wished to add defendants from Lubbock and John and Jane Doe defendants from Abilene to these proceedings. But the district court noted that Epley had already named various Lubbock officials and John and Jane Does in Abilene in his original complaint. When the Lubbock court severed the claims and transferred them to the other two courts, it specifically provided that only the claims against Appellees regarding the denial of medical care in Abilene would be severed and transferred to Abilene. It then noted that the Lubbock case would remain unchanged apart from the elimination of Appellees and specific defendants from Fort Stockton.

The district court did not abuse its discretion by denying Epley's motion for leave. Epley apparently did not seek leave to add any defendants that were not already named in one of the three suits. The district court explained the basis for its denial: "[Epley] effectively want[ed] [the Abilene Division] to reconsider how the [Lubbock Division] handled the severance and transfer." That conclusion was not an abuse of the district court's broad discretion.

10

No. 23-10374

## IV

Epley objects to the Abilene Division's dismissal of his claims under 28 U.S.C. §§ 1915(e)(2) and 1915A with prejudice for frivolousness and failure to state a claim upon which relief could be granted.

We review dismissals for frivolousness under 28 U.S.C. § 1915(e)(2)(B)(i) for abuse of discretion. *Carmouche v. Hooper*, 77 F.4th 362, 366 (5th Cir. 2023) (citing *Boyd v. Biggers*, 31 F.3d 279, 282 (5th Cir. 1994)). "A district court may dismiss as frivolous the complaint of a prisoner proceeding *in forma pauperis* if it lacks 'an arguable basis in law or fact.'" *Id.* (quoting *McDonald v. Johnson*, 139 F.3d 1056, 1060 (5th Cir. 1998)). We review a district court's dismissal for failure to state a claim under § 1915(e)(2)(B)(ii), however, *de novo*. *Id.* Dismissal under that provision is appropriate when the complaint "lacks sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Because the district court dismissed the claims pursuant to both subsections, review should be de novo." *Tapp v. Wilkersen*, 298 F. App'x 308, 309 (5th Cir. 2008) (per curiam) (unpublished) (citing *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005)).

"*Pro se* pleadings . . . must be liberally construed." *Colvin v. LeBlanc*, 2 F.4th 494, 497 (5th Cir. 2021) (citing *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 419 (5th Cir. 2017)); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (noting a federal court's obligation to liberally construe the pleadings of *pro se* parties).

## A

Epley alleges that the district court erred by dismissing his § 1983 claims under the Eighth, Fourteenth, and First Amendments.

**1**

Epley alleges that Appellees violated his Eighth Amendment rights by refusing to provide him with necessary medical treatment.

"Prisoners are entitled to receive adequate medical care[,]" *Rogers v. Boatright*, 709 F.3d 403, 409 (5th Cir. 2013) (internal quotation marks omitted and alteration adopted) (quoting *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006)), and an official's unreasonable withholding of such care can violate the Eighth Amendment, *id.*; *see also* U.S. CONST. amend. VIII. An official "violates the Eighth Amendment's prohibition against cruel and unusual punishment when his conduct demonstrates deliberate indifference to a prisoner's serious medical needs, constituting an unnecessary and wanton infliction of pain." *Rogers*, 709 F.3d at 409 (internal quotation marks omitted) (quoting *Easter*, 467 F.3d at 463). "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006) (citing *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994)).

"Deliberate indifference is an 'extremely high' standard to meet." *Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009) (quoting *Gobert*, 463 F.3d at 346). The official must know of and deliberately disregard "an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Deliberate indifference is "both an objective and subjective standard." *Rogers*, 709 F.3d at 410.

**a**

Epley claims a Lubbock official told Sergeant Lopez to prevent Epley from receiving treatment and Sergeant Lopez agreed. Although other

prisoners noticed the severity of Epley's injuries and alerted Sergeant Lopez, and Sergeant Lopez saw Epley's bruises, he allegedly knew Epley had been beaten by Lubbock officials and refused to alert medical professionals. According to Epley, Sergeant Lopez then "threatened [Epley] with additional harm" if he did not comply with orders.

Taking all well-pleaded allegations as true and construing them liberally, as we must, *McKnight v. Canulette*, 190 F.3d 538, 1999 WL 642844, at *1 (5th Cir. 1999) (per curiam) (unpublished), Epley alleges that his injuries were so apparent that his need for care was obvious. But he only alleges two patent signs of the extent of his injuries—he could barely walk and had several visible bruises. Taken together, these allegations are not sufficient to establish that Epley had a "serious medical need" that was "so apparent that even laymen would recognize that care is required." *Gobert*, 463 F.3d at 345 n.12. Bruises and strained walking are not the kind of acute medical conditions that would signal to a layman that immediate medical attention is required. *See, e.g.*, *Little v. Spears*, 55 F.3d 632, 1995 WL 313938, at *2 (5th Cir. 1995) (per curiam) (unpublished) (holding there was "no showing of deliberate indifference" where plaintiff alleged prison officials should have noticed he needed care because he had "multiple cuts and bruises"). The complaint therefore does not plausibly allege that Sergeant Lopez acted with deliberate indifference to Epley's serious medical needs.

**b**

Epley alleges that Blue noticed visible signs of Epley's injuries while dispensing medication to prisoners in Abilene. Blue told Epley she would "file a notice to have [him] brought to the infirmary for treatments[,]" but Epley "was never taken to the infirmary." "Blue denied any medical assistance," he claims, "regardless of the fact that she may have initially wanted [Epley] to be provided with medical care." Epley's allegations do not

establish that Blue acted with deliberate indifference. The facts alleged show only that Blue wanted to get Epley help, but that he never received that help. As with Sergeant Lopez, Epley did not allege any facts establishing that Blue deliberately disregarded Epley's serious medical need.

**2**

Epley alleges that Appellees violated his Fourteenth Amendment rights to due process and equal protection.

Epley did not allege any facts supporting his due process claim. He merely included it in a list of constitutional provisions Appellees allegedly violated. His questionnaire responses indicate that he intended to plead only an equal protection claim, not a due process claim. He also did not allege facts establishing his equal protection claim. An equal protection claim requires a plaintiff to demonstrate that he has been treated differently than other individuals who are similarly situated. *See, e.g.*, *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001) (per curiam) (noting a plaintiff asserting an equal protection claim "must allege and prove that he received treatment different from that received by similarly situated individuals"). Epley does not allege that any similarly situated comparators were treated differently.

**3**

Epley alleges that Appellees violated his First Amendment rights by engaging in "[r]etaliation for having reported the misuse of force and for having sought much-needed medical and physical treatments."

"Prison officials may not retaliate against prisoners for exercising their constitutional rights, including their First Amendment right to file grievances." *Petzold v. Rostollan*, 946 F.3d 242, 252 (5th Cir. 2019) (cleaned up) (quoting *Butts v. Martin*, 877 F.3d 571, 588 (5th Cir. 2017)). To plead a retaliation claim, Epley must establish (1) that he exercised a specific

constitutional right, (2) that Appellees intended to retaliate against Epley for his exercise of that right, (3) that Appellees took retaliatory adverse action against Epley, and (4) causation. *Butts*, 877 F.3d at 588 (quoting *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008)). "This places a significant burden on the inmate." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995).

As discussed, Epley has not plausibly alleged that Appellees deliberately disregarded his serious need for medical treatment, so he has not adequately alleged retaliatory adverse action. He has also not pleaded facts establishing that any objectionable conduct by Appellees was caused by his exercise of his First Amendment rights. Notably, Epley does not allege that Appellees even knew about his reports regarding the use of force.

**B**

Epley also challenges the dismissal of his failure-to-accommodate claims under the ADA and the Rehabilitation Act.

To make out a *prima facie* case under the ADA or the Rehabilitation Act,[5] a plaintiff must show:

> (1) that he is a qualified individual within the meaning of the ADA; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such

---

[5] "The [Rehabilitation Act] and the ADA are judged under the same legal standards, and the same remedies are available under both Acts." *Back v. TDCJ Inst. Div.*, 684 F. App'x 356, 358 (5th Cir. 2017) (per curiam) (unpublished) (quoting *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010)).

exclusion, denial of benefits, or discrimination is by reason of his disability.

*Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004). The third prong can be satisfied by demonstrating that the public entity failed to provide reasonable accommodations for the plaintiff's disabilities. *Valentine v. Collier*, 993 F.3d 270, 290 (5th Cir. 2021) (citing *Windham v. Harris County*, 875 F.3d 229, 235 (5th Cir. 2017)).

Epley alleges that he is a qualified individual by reason of (1) his psychological disabilities—namely, his documented history of symptoms associated with a TBI and PTSD; and (2) his physical injuries sustained while in Lubbock, which left him "[even] more disabled."

**1**

The first prong is "not a demanding question." *Epley v. Gonzalez*, 860 F. App'x 310, 312–13 (5th Cir. 2021) (per curiam) (unpublished) (citing 42 U.S.C. § 12102(4)(A)). "A qualifying disability under the ADA is either (1) a physical or mental impairment that substantially limits one [or] more of the major life activities of the individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." *Id.* at 313 (internal quotation marks omitted) (quoting 42 U.S.C. § 12102(2)). Under the ADA, "major life activities" include walking, standing, concentrating, and thinking. 42 U.S.C. § 12101(2)(A).

In *Gonzalez*, we held that Epley had adequately shown that he was a qualified individual under the ADA because he alleged facts that "demonstrate that his PTSD and TBI substantially limit his ability to think and sleep." 860 F. App'x at 313. We also held that he had presented "a record of such an impairment" based on TDCJ's provision of a single-cell

designation for many years. *Id.* at 313–14. Epley has likewise adequately made that showing here.

Epley also alleges that his physical ailments caused by the attack in Lubbock constitute a disability for purposes of the ADA. Even a temporary injury can qualify as a disability where the injury substantially impacts the plaintiff's major life activities. *See, e.g.*, *Cadena v. El Paso County*, 946 F.3d 717, 724 (5th Cir. 2020) (holding that a prisoner's broken leg was a qualifying disability where it limited her mobility).

Epley's physical injuries may have been temporary, but he alleges that they inhibited his mobility and prevented him from accessing the food and medication trays in his cell and using the toilet. Contrary to the district court's finding, he has plausibly alleged that his injuries substantially limited his ability to engage in major life activities and constituted a qualifying disability under the ADA.

**2**

The second and third prongs require a plaintiff to show that he was discriminated against by reason of his disability. *Melton*, 391 F.3d at 671–72. As noted, a plaintiff can satisfy this requirement by demonstrating that the defendant failed to accommodate the plaintiff's disabilities. *Valentine*, 993 F.3d at 290. To succeed on such a claim, "a plaintiff must show that the entity knew of the disability and its consequential limitations, either because the plaintiff requested an accommodation or because the nature of the limitation was open and obvious." *Cadena*, 946 F.3d at 723–24. "To satisfy the knowledge requirement, the entity must understand the limitations a plaintiff experienced *as a result* of his disability." *Valentine*, 993 F.3d at 290 (emphasis in original).

In *Gonzalez*, this court held that Epley had adequately alleged "that the [Lubbock] officials knew of his disabilities and the accommodation

provided to him based on them, and yet denied him the benefit of safe prison housing and appropriate transportation by ignoring the restrictions entirely." 860 F. App'x at 314. Here, however, he does not plead that Appellees were the ones who disregarded his single-cell medical designation or placed him in a stress position on the transport bus. They placed him in a single-occupancy cell. Accordingly, he did not adequately allege a failure to accommodate his disabilities by ignoring his single-cell designation or inappropriately transporting him in a prison bus.

Epley also alleges that Appellees failed to accommodate his disabilities by neglecting to move him from a single-occupancy cell to an in-patient bed in the Abilene infirmary. He claims that the bedding he was provided was inadequate and that a medical bed in the infirmary would have allowed him to access food, medications, and the toilet more easily and without causing additional pain. These allegations of inadequate accommodations are based solely on the pain and lack of mobility caused by his physical injuries. But as discussed in the context of Epley's Eighth Amendment claim, he has not pleaded enough facts to show that the extent of his physical injuries and the "consequential limitations" caused by them, *Cadena*, 946 F.3d at 724, were obvious to laymen like Appellees. He did not adequately allege that Appellees were able to "understand the limitations [Epley] experienced as a result of his disability." *Valentine*, 993 F.3d at 290 (emphasis omitted). He therefore did not make out a *prima facie* failure-to-accommodate claim under the ADA or the Rehabilitation Act.

## V

Epley objects to the Abilene Division's dismissal of his state law claims for lack of subject-matter jurisdiction, contending that it had diversity jurisdiction over those claims.

We review a district court's conclusion that it lacked subject-matter jurisdiction over certain claims *de novo*. *Stiftung v. Plains Mktg., L.P.*, 603 F.3d 295, 297 (5th Cir. 2010). "Jurisdictional findings of fact are reviewed for clear error." *Id.* (citing *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005)). A court has subject-matter jurisdiction to hear a case or controversy where the amount in controversy exceeds $75,000 and the parties are completely diverse—meaning they are not citizens of the same state. 28 U.S.C. § 1332(a). Whether a court has subject-matter jurisdiction is determined at the time suit is filed. *Double Eagle Energy Servs., L.L.C. v. MarkWest Utica EMG, L.L.C.*, 936 F.3d 260, 263 (5th Cir. 2019) (quoting *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570 (2004)). "The party asserting jurisdiction has the burden of establishing it." *McMahon v. Fenves*, 946 F.3d 266, 270 (5th Cir. 2020).

Parties are diverse if they are not domiciled in the same state. *See Acridge v. Evangelical Lutheran Good Samaritan Soc.*, 334 F.3d 444, 447–48 (5th Cir. 2003). To establish domicile, "the person must demonstrate both (1) residence in a new state and (2) an intention to remain in that state indefinitely." *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 793, 801 (5th Cir. 2007) (citing *Coury v. Prot*, 85 F.3d 244, 250 (5th Cir. 1996)). "Residence alone is not the equivalent of citizenship, although the place of residence is prima facie the domicile . . . ." *Stine v. Moore*, 213 F.2d 446, 448 (5th Cir. 1954). "[W]hen jurisdiction depends upon diverse citizenship, the absence of sufficient averments, or of facts in the record, showing such required diversity of citizenship, is fatal, and cannot be overlooked by the court . . . ." *Knight v. Lutcher & Moore Lumber Co.*, 136 F. 404, 405 (5th Cir. 1905).

Epley's second amended complaint alleged that he "is a citizen of France who resides in France." The district court found that Epley was a citizen of Texas prior to his incarceration. Relying on the presumption of

continuing domicile, *see Preston*, 485 F.3d at 799, it held that he had not rebutted the presumption that he remained a Texas citizen at the time he filed suit.

Epley does not argue that the district court's conclusion that he was a citizen of Texas prior to his incarceration was clearly erroneous. His allegations regarding his French citizenship are conclusory and insufficient to overcome the presumption that he was a citizen of Texas at the time he filed suit and to establish that he is a citizen of France. He also failed to allege the citizenship of the defendants. He did not satisfy his burden of establishing all facts supporting the court's jurisdiction in his complaint. *See McMahon*, 946 F.3d at 270. That "[f]ailure adequately to allege the basis for diversity jurisdiction mandates dismissal." *Stafford v. Mobil Oil Corp.*, 945 F.2d 803, 805 (5th Cir. 1991). The district court correctly dismissed his state law claims for lack of subject-matter jurisdiction.

## VI

Epley complains that the Abilene Division did not provide him sufficient time to respond to the second questionnaire, and that it should have provided him counsel to help him prepare his responses because it knew about his disabilities.

We review the handling of a motion for additional time to respond to a questionnaire for abuse of discretion. *Boudreaux v. Doe*, 68 F.3d 465, 1995 WL 581493, at *1 (5th Cir. 1995) (per curiam) (unpublished). We likewise review the denial of a motion to appoint counsel for abuse of discretion. *Jackson v. Dall. Police Dep't*, 811 F.2d 260, 261 (5th Cir. 1986).

Epley sought and received additional time to respond to the second questionnaire, which evinced his knowledge of applicable procedures, and he filed his responses to some of the questions by the extended deadline.

No. 23-10374

Moreover, Epley had previously demonstrated his ability to respond to the first questionnaire. He has not shown an abuse of discretion.

## VII

Finally, Epley asks that the Abilene Division be directed to appoint counsel on remand. Because we conclude that remand is inappropriate, this request is moot.

\* \* \*

We AFFIRM the judgment of the district court in full.

No. 23-10374

James E. Graves, Jr., *Circuit Judge*, dissenting:

Charles Epley appeals the district court's dismissal of his claims filed pursuant to 42 U.S.C. § 1983 and various other federal and state laws and challenges the sua sponte order severing and transferring some of his claims. Because I would vacate and remand, I respectfully dissent.

Epley is a disabled former prisoner who was incarcerated within the Texas Department of Criminal Justice (TDCJ) for some 28 years. As a result of a previous attack in 1994, Epley suffers from Post-Traumatic Stress Disorder (PTSD) and Traumatic Brain Injury and was granted a "single-cell restriction" to be housed alone. In 2016, authorities attempted to move Epley from his single-occupant cell to another cell with three other inmates at the John Montford Unit (Montford), TDCJ's psychiatric prison in Lubbock, Texas. The incident triggered severe PTSD symptoms which prevented him from entering the cell. Epley said he asked for a psychiatrist or doctor, but was instead ordered to remove his clothing, placed in an empty room, pepper sprayed and brutally assaulted by guards. As a result of the incident, Epley asserts that he suffered broken ribs, a broken nose, a concussion, and various other injuries, for which he was denied adequate medical care. Epley said he was then handcuffed and returned to the multi-occupancy cell before being transported in handcuffs some 170 miles via prison bus to the Robertson Unit near Abilene. A few days later, Epley was transferred some 275 miles to the Lynaugh Unit near Pecos. Epley asserts that the various TDCJ officials and employees with all three units conspired to violate his rights, deny him disability accommodations and medical care for his injuries, and retaliate against him for reporting the incident at Montford.

Following his release from prison in 2018, Epley filed a civil rights complaint in the Dallas Division of the Northern District of Texas against

22

several defendants, including TDCJ staff members from the Montford, Robertson and Lynaugh units, asserting claims under federal and state law. *Epley v. Montford*, No. 3:18-CV-1243. On June 4, 2018, a Dallas Division magistrate judge (MJ) entered an order sua sponte transferring Epley's case to the Lubbock Division under 28 U.S.C. § 1404(a). On August 15, 2018, the Lubbock MJ entered an order sua sponte severing all claims against any staff from the Robertson or Lynaugh units and transferring those claims to the Abilene Division of the Northern District of Texas and the Pecos Division of the Western District of Texas, respectively, under 28 U.S.C. § 1406(a). The majority concedes that the claims were transferred pursuant to 28 U.S.C. § 1406(a).

Epley subsequently filed amended complaints in the Lubbock, Abilene, and Pecos courts. The Lubbock court retained and subsequently dismissed the Montford claims as frivolous for failure to state a claim. *Epley v. Gonzalez*, No. 5:18-CV-0142, 2019 WL 2579231 (N.D. Tex. June 24, 2019). This court reversed and remanded on Epley's claims under the Americans with Disabilities Act and § 504 of the Rehabilitation Act. *Epley v. Gonzalez*, 860 F. App'x 310, 311-15 (5th Cir. 2021). The remanded case remains pending on the Lubbock docket, and Epley has now been appointed counsel.

The Pecos court granted summary judgment to the defendants on Epley's claims, and this court affirmed. *Epley v. Itie*, No. 4:18-CV-34, 2021 WL 11959969 (W.D. Tex. Apr. 17, 2021), 2021 WL 2657288 (W.D. Tex. May 28, 2021), *aff'd*, No. 21-50574, 2024 WL 864304, 1-2 (5th Cir. Feb. 29, 2024). In that appeal, this court declined to consider Epley's challenge to the venue transfer order because Epley did not seek mandamus after the severance and transfer occurred. *Id.* at n. 1. In doing so, this court cited *Defense Distributed v. Bruck*, 30 F.4th 414, 423, 426 n.13 (5th Cir. 2022), which states that "in this circuit, mandamus is the prescribed vehicle for reviewing rulings of transfers of cases pursuant to 28 U.S.C. § 1404(a)." *Id.*

at 423. However, the Lubbock court did not transfer the case pursuant to 28 U.S.C. § 1404(a); it severed and transferred under 28 U.S.C. § 1406(a). The Supreme Court has held that mandamus is not the appropriate remedy to vacate an order to sever and transfer under § 1406(a). *See Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 382-83 (1953). Instead, such an order is reviewable on appeal from the final judgment. *Id.* Thus, the discretionary law of the case doctrine clearly does not apply.

The majority concludes that "*Itie* appears to have *implicitly* found that the Lubbock Division transferred Epley's claims under § 1404(a)." (Emphasis added). I disagree for several reasons, as discussed herein. As an initial matter, the applicable footnote in the *Itie* summary affirmance provides no basis or authority for amending the explicit language of the district court's transfer orders.[1] *Itie*, 2024 WL 864304, *1 at n. 1. I also disagree with the majority's conclusion that there is "no reason to reach a different result." The majority says that this is so because, although the Lubbock MJ's initial transfer order explicitly relied on § 1406(a), the MJ "*implicitly* acknowledged that it had cited § 1406(a) in error" on reconsideration. (Emphasis added). The majority then states, "[a]nd Epley expressly challenges the § 1404(a) analysis—he does *not expressly* mention § 1406(a). . . . We agree with *Itie* that *Bruck* required Epley to seek mandamus after the § 1404(a) transfer, and we likewise decline to consider his arguments." (Emphasis added).

The majority's conclusion is belied by the record, unsupported by any authority, and expressly erroneous. The transfer orders did not merely

---

[1] The majority also cites *Trans World Airlines, Inc. v. Morales*, 949 F.2d 141, 144 (5th Cir. 1999) for the proposition that the law of the case doctrine is more likely to apply "when the prior opinion was apparently well-considered." To the extent that the majority is attempting to suggest that a vague footnote in a summary affirmance "was apparently well-considered," I disagree.

"appear to rely on § 1406(a)." The orders explicitly relied on § 1406(a), as even the majority concedes. The MJ entered two orders on August 15, 2018, which said the following:

> Because "a substantial part of the events or omissions giving rise" to these claims occurred in the Abilene Division and Western District of Texas, Epley has filed his claims against these Defendants in the wrong division and/or district, thereby permitting this court to transfer such claims to a court where they "could have been brought." *See* §§ 1391(b), 1406(a)."

The MJ then ordered that all claims against the Robertson defendants "shall be severed from the instant Amended Complaint and transferred to the United States District Court for the Northern District of Texas, Abilene Division, *in accordance with 28 U.S.C. § 1406(a)*." (Emphasis added). That new case was opened in Abilene on August 15, 2018. Further, the Lubbock MJ ordered that all claims against the Lynaugh defendants "shall be severed from the instant Amended Complaint and transferred to the United States District Court for the Western District of Texas, Pecos Division, *in accordance with 28 U.S.C. § 1406(a)*." (Emphasis added). That portion of the case was electronically transferred to the Western District of Texas on August 15, 2018.

Epley objected to the transfer orders and sought reconsideration on September 10, 2018. The Lubbock MJ denied reconsideration by order entered September 28, 2018, some six weeks after the claims had been severed and transferred. The order, which also disposed of various other motions, offered two paragraphs on the severance and transfer, and included a citation to 28 U.S.C. § 1404(a). The majority now relies on that single citation to apparently conclude that the order denying reconsideration somehow amends or overrules the transfer orders. But the majority fails to explain how that would even be so. Not only did the order denying

reconsideration say nothing to indicate that it was intended to amend or overrule the transfer orders, but the MJ lacked jurisdiction to even enter such an order. Once the Lubbock court transferred the severed claims, it no longer had jurisdiction over those claims. *See Def. Distributed v. Platkin,* 55 F.4th 486, 492-93 (5th Cir. 2022); *see also In re Plumbing Fixture Cases*, 298 F. Supp. 484, 495-96 (J.P.M.L. 1968); *In re Sw. Mobile Homes*, 317 F.2d 65, 66 (5th Cir. 1963); *In re Space Expl. Techs., Corp.*, No. 24-40103, 2024 WL 982501, **1-2 (5th Cir. Feb. 26, 2024) (unpublished). Thus, the Lubbock court's order on reconsideration has no effect. Likewise, the majority fails to cite any applicable authority for its claim that a transferor court maintains simultaneous jurisdiction over claims that it severs and transfers to another court, or that an order denying reconsideration on claims that were severed, transferred, and received by the transferee court six weeks prior somehow overrules or amends the reason they were transferred, and it fails to distinguish the applicable authority to the contrary.

The majority also maintains that Epley's citation of § 1404(a) somehow confirms its conclusion regarding what *Itie* "appears to have implicitly found." Epley's mention of § 1404(a) in an attempt to cover his bases as a result of the MJ's erroneous citation in the order denying reconsideration in no way changes the orders transferring the claims under § 1406(a). Regardless, Epley explicitly argues on appeal that the Lubbock court erred by severing and transferring his claims, which was done under § 1406(a), and asserts that "the severance and transfer here were improper under *both analyses*." (Emphasis added). Epley also provides citation to his argument regarding § 1406(a) in the supplemental brief filed by counsel in *Itie*. Moreover, Epley clearly explains that the district court offered only a

pro forma § 1404(a) analysis on reconsideration, hence his mention of § 1404(a).[2]

The present appeal concerns the claims that were severed and transferred to the Abilene Division, and subsequently dismissed. *Epley v. Lopez*, No. 1:18-CV-115, 2023 WL 2481607 (N.D. Tex. March 13, 2023). Epley appeals the district court's dismissal of all of his claims, and he challenges the severance and transfer of his claims under 28 U.S.C. § 1406(a). Epley asserts that the sua sponte severance and transfer of his claims from the Lubbock Division to the Abilene Division was erroneous under 28 U.S.C. § 1406(a) and 1391(b).

This court reviews questions of venue for an abuse of discretion. *United States v. Real Property Known as 200 Acres of Land Near FM 2686 Rio Grande City, Tex.*, 773 F.3d 654, 657 (5th Cir. 2014).

Venue under 42 U.S.C. § 1983 is determined by the general venue provision found in 28 U.S.C. § 1391(b), which states:

> A civil action may be brought in--
>
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

---

[2] Epley correctly refers to that analysis as "scant."

28 U.S.C. § 1391(b).

Epley asserts that the Lubbock Division was a proper venue under § 1391(b)(1) because numerous defendants lived in that division and all of the defendants were Texas residents. Epley also asserts that venue was proper in Lubbock under 1391(b)(2) because a substantial part of the events or omissions giving rise to his Robertson Unit claims occurred there. Further, Epley asserts that the defendants from all three units conspired and colluded.

Moreover, Lubbock was not the *wrong* district or division, as required for a transfer under § 1406(a), which states: "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Whether venue is "wrong" or "improper" depends exclusively on whether the court in which the case was brought satisfies the requirements of 28 U.S.C. §§ 1391(b). Lubbock clearly does.

This court has previously addressed a similar case. In *Holloway v. Gunnell*, 685 F.2d 150, 152-53 (5th Cir. 1982), this court reversed a district court's determination of improper venue under § 1406(a) because venue could be proper in more than one district. *Id.* at 153. The court also concluded that the burden was not on the plaintiff to show that venue was proper in the complaint; the defendant has the burden to object. *Id.* Moreover, "[s]ince the district court has not yet required the defendants to answer, it would be inappropriate for the court to anticipate a venue problem under the general venue statutes." *Id.*

No. 23-10374

In *Thunderhorse v. Lynaugh*, No. 93-5568, 1994 WL 574715, * 6 (5th Cir. Oct. 12, 1994)[3], this court reiterated that § 1406(a) only applies to a case brought in the wrong district or division, the burden is on the defendant to establish improper venue, and it is error "to anticipate a venue problem under [28 U.S.C. § 1391(b)]" and transfer claims under § 1406(a). *Id.* at 6-7 (quoting *Holloway*, 685 F.3d at 153).

Here, the Lubbock MJ prematurely ordered that some of Epley's claims be severed and transferred without any showing that venue was improper in the Lubbock Division or even allowing service of process on the defendants. ECF 5:18-CV-142, 27. This was an abuse of discretion.

For these reasons, I would vacate the Lubbock MJ's order severing all claims against any staff from the Robertson unit and transferring those claims to the Abilene Division of the Northern District of Texas under 28 U.S.C. § 1406(a). ECF TXND 5:18-CV-142, 24. I would also vacate the Abilene District Court's judgment dismissing Epley's claims, and remand Epley's claims to the Lubbock Division of the Northern District of Texas to be considered with his remaining claims in 5:18-CV-142 and the benefit of counsel. Thus, I respectfully dissent.

---

[3] Though this decision was unpublished, it remains precedential under 5th Cir. R. 47.5.3.